Filing # 88318553 E-Filed 04/22/2019 02:08:50 PM

MCMB00020-3083

| | CASE NUMBER |
|---|---|
| ☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | |

| DIVISION<br>☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br><br>13-2019-CA-009499 |
|---|---|---|

| PLAINTIFF(S)<br>FLORIDA CARRY, INC.,a<br>Florida not for profit corporation,<br>et. al. | VS. DEFENDANT(S)<br>CITY OF MIAMI BEACH,<br>FLORIDA, et. al. | SERVICE |
|---|---|---|

**SERVED**
DATE 5/8/19
TIME 10:49 Am
SHERIFF OF DADE COUNTY
DADE COUNTY FLORIDA
BY C. Alixady D.S
BADGE No. 9092

CLOCK IN

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): City of Miami Beach, Florida

c/o Dan Gelber, Mayor

1700 Convention Center Dr.

Miami Beach, Florida 33139

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Eric J. Friday

whose address is: 1919 Atlantic Blvd., Jacksonville, FL 32207

CITY ATTORNEY OFFICE
2019 MAY -8 PM 2:21
RECEIVED

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| HARVEY RUVIN<br>CLERK of COURTS | | DATE<br>4/24/2019 |
|---|---|---|
| | DEPUTY CLERK | |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|
| ☑ CIVIL  ☐ OTHER  ☐ DISTRICTS | Form for Personal Service on a Natural Person **SERVED** | 13-2019-CA-009499 |

| PLAINTIFF(S) | VS.  DEFENDANT(S) | |
|---|---|---|
| FLORIDA CARRY, INC., a Florida not for profit corporation, et. al. | CITY OF MIAMI BEACH, FLORIDA, et. al. | **DATE** 5/3/19  **CLOCK IN** **TIME** 10:53 AM |

*SHERIFF OF DADE COUNTY*
*DADE COUNTY FLORIDA*

THE STATE OF FLORIDA:TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

BY _____
BADGE No. 9092

| To Defendant(s): | Address: |
|---|---|
| JIMMY L. MORALES | 1700 Convention Center Dr. Miami Beach FL 33139 |

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

#### MIAMI-DADE COUNTY COURT LOCATIONS

| | | | |
|---|---|---|---|
| ☑ **Dade County Courthouse** (05)  Room 133  73 West Flagler Street  Miami, FL 33130 | ☐ **Martin Luther King Office** (20)  2525 N.W. 62nd Street  Room 1200 A  Miami, FL 33147 | ☐ **Hialeah District Court** (21)  Room 100  11 East 6th Street  Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)  Room 100  15555 Biscayne Blvd.  North Miami Beach, FL 33160 |
| ☐ **Miami Beach District Court** (24)  Room 200  1130 Washington Avenue  Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)  Room 100  3100 Ponce De Leon Blvd.  Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)  Room 1200  10710 SW 211 Street  Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney  Eric J. Friday  Florida Bar No.  0797901 | Address:  1919 Atlantic Blvd., Jacksonville, FL 32207 | |
|---|---|---|
| **CLERK OF COURTS**  **HARVEY RUVIN** | *DReBa*  (SEAL: CIRCUIT AND COUNTY COURTS MIAMI-DADE COUNTY, FLORIDA)  DEPUTY CLERK | DATED ON:  **RECEIVED**  2019 MAY -1 AM 10: 24  CITY ATTORNEY'S OFFICE  04/24/2019 |

### AMERICANS WITH DISABILITIES ACT OF 1990
### ADA NOTICE

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

IN THE CIRCUIT COURT, ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.:
DIV.:

FLORIDA CARRY, INC., a
Florida not for profit corporation,
MICHAEL TAYLOR, an individual,
STEVEN JENKINS, an individual,
SEAN DEVINE, an individual,
CHRISTOPHER PHILPOT, an individual,
CARLOS GUITERREZ, an individual,
JONAH WEISS, an individual,
     Plaintiffs,

v.

CITY OF MIAMI BEACH,
FLORIDA,
JIMMY L. MORALES, in his official
and individual capacity,
DAN OATES, in his official
and individual capacity,
OFFICER (FNU) GARCIA, an individual
OFFICER KENNETH BOLDUC, an individual
OFFICER GUSTAVO VILLAMIL, an individual
OFFICER (FNU) RIVERA, an individual
LT. EDUARDO GARCIA, an individual
OFFICER ERROL VIDAL, an individual
OFFICER MANUEL CANO, an individual
OFFICER JESSICA SALABARRIA, an individual
OFFICER ROBERT MITCHELL, an individual
OFFICER NAHAMI BICELIS, an individual
OFFICER LAVANIEL HICKS, an individual
OFFICER ELIZABETH VIDAL, an individual

    Defendants
_____/

1

## COMPLAINT

FLORIDA CARRY, INC., MICHAEL TAYLOR, an individual, STEVEN JENKINS, an individual, SEAN DEVINE, an individual, CHRISTOPHER PHILPOT, an individual, CARLOS GUITERREZ, an individual, JONAH WEISS, an individual by and through their undersigned attorneys, sues CITY OF MIAMI BEACH, FLORIDA, JIMMY L. MORALES, OFFICER (FNU) GARCIA, OFFICER KENNETH BOLDUC, OFFICER GUSTAVOVILLAMIL, OFFICER (FNU) RIVERA, LT. EDUARDO GARCIA, OFFICER ERROL VIDAL, OFFICER MANUEL CANO, OFFICER JESSICA SALABARRIA, OFFICER ROBERT MITCHELL, OFFICER NAHAMI BICELIS, OFFICER LAVANIEL HICKS, and OFFICER ELIZABETH VIDAL Defendants, and state

1    This is an action for damages in excess of $15,000.00, and for declaratory and injunctive relief.

2.    Venue is proper in Miami-Dade County, Florida, as the acts complained of occurred therein and all Defendants' primary places of business are located there.

2

PARTIES

3.　　Defendant City of Miami Beach, Florida, ("Miami Beach" or "the City") is a local governmental entity created and existing under the laws of the state of Florida as a municipality.

4.　　Defendant Jimmy L. Morales, ("Morales"), is the appointed City Manager of Miami Beach, and is the appointed chief executive officer of the City responsible for the day to day operations, and implementation and enforcement of Miami Beach's, policies, rules, regulations, and ordinances by employees of the City.

5.　　Defendant Dan Oates, ("Oates"), is the Chief of the Miami Beach Police Department and is responsible for day to day operations, and implementation and enforcement of Miami Beach Police Department's policies, rules, regulations, and ordinances by employees of the City

6.　　Plaintiff, Florida Carry, Inc., ("Florida Carry"), is a Florida not for profit corporation existing under the laws of Florida.

7.　　Florida Carry's purpose is to advance the fundamental civil right of all Floridians to keep and bear arms for self-defense as guaranteed by the Second Amendment to the United States Constitution and the Constitution of Florida's Declaration of Rights.

8.      Michael Taylor, Steven Jenkins, Sean Devine, Christopher Philpot, Carlos Guiterrez, and Jonah Weiss, (collectively "the Citizens" or "fishermen"), are all individuals who were attending a Florida Carry sanctioned gathering on June 24, 2018 in Miami Beach, Florida.

9.      Each Officer identified is sued in his or her individual capacity.

10.     Plaintiffs have identified two officers as (FNU), or First Name Unknown, followed by the officers last name.

11.     Plaintiffs have made a good faith attempt to identify the first names of officers (FNU) Garcia and (FNU) Rivera but have been unable to do so and will request an amendment of the case style as soon as the officers are identified through discovery.

12.     The good faith attempt to more properly identify the two officers included an email to the Chief Deputy City Attorney for the City of Miami Beach who refused to identify the officers after a request for their first names.

13.     Officers (FNU) Garcia, Kenneth Bolduc, Gustavo Villamil, (FNU) Rivera, Errol Vidal, Manuel Cano, Jessica Salabarria, Robert Mitchell, Nahami Bicelis, Lavaniel Hicks, Elizabeth Vidal and Lt. Eduardo Garcia, (collectively "Officers") were at all times material, police officers employed by the City of Miami Beach.

## FACTS IN COMMON

14.    On June 24, 2018, at approximately 10:30 a.m., the fishermen were on the pier at South Pointe Park in the city of Miami Beach.

15.    A sign at the entrance to the South Pointe Pier promulgates a city policy or rule prohibiting firearms on the pier.

16.    Approximately three weeks prior to the events herein, Plaintiff Philpot sent multiple emails to the Florida Fish and Wildlife Conservation Commission (FWC) office with jurisdiction over the Miami Beach area, the City Attorney for Miami Beach, and to Defendant Chief Oates.

17.    A timely response was received from FWC acknowledging that it was aware of the relevant statute regarding open carry of firearms while fishing, however no response was received from the City Attorney or Oates.

18.    As a state surrounded on three sides by seawater, and inundated by ponds and lakes, the rights of Florida fishermen to bear arms, that have existed since before Florida was even a U.S. Territory, should be no surprise to Law Enforcement and are undoubtedly clearly established.

19.    The right to open carry while fishing in Florida has existed in its present form and substantially unchanged since 1965.

20.    The right to bear arms while fishing has never been illegal in Florida.[1]

21.    The right to openly carry a firearm while fishing is well established by statutory law in Florida.  Sec. 790.25(3)(h), Fla. Stat.

22.    Defendant Officers knew or should have known of the existence of Sec. 790.25(3) as it is the very statutory subsection which allows Defendant Officers to openly carry a firearm in the performance of their duties as police officers.  Sec. 790.25(3)(d), Fla. Stat.

23.    During their interactions with Plaintiffs, Defendant Officers incorrectly relied upon the existence of the sign and the language thereon to tell the Citizens their conduct was unlawful.

24.    The sign Defendant Officers used as justification for their actions, was null and void under the terms of Sec. 790.33, Fla. Stat.

25.    The Citizens were engaged in a lawful fishing expedition.

26.    All of the Citizens, except Devine, were in possession of lawfully carried firearms that were visible to the ordinary sight of others as permitted by Sec. 790.25(3)(h), Fla. Stat.

27.    An unknown employee of Miami Beach, who was a park ranger, approached the six fishermen.

---

[1] While a license was required to carry a Winchester Repeating Rifle after 1893, or a pistol after 1901, any other firearm could be lawfully carried while fishing throughout the history of the State of Florida.

28.     The unknown employee of Miami Beach informed the fishermen that they were not allowed to openly carry firearms.

29.     The fishermen informed the unknown employee of Miami Beach that they were in compliance with the law and offered a printed copy of the applicable statute.

30.     The unknown employee of Miami Beach stated, "I don't need to see your paper".

31.     After a few minutes of otherwise polite discussion, and two phone calls by the unknown employee of Miami Beach, the unknown employee of Miami Beach left the area of the Citizens.

32.     Moments later, four police officers of the Miami Beach Police Department (Garcia, Bolduc, Villamil, and Rivera) approached the five fishermen who were on the pier (Michael Taylor, Steven Jenkins, Sean Devine, Christopher Philpot, and Carlos Guiterrez).

33.     When the officers approached the fishermen, all five the fishermen were engaged in attempting the lawful taking of fish from a state-managed water body.

34.     The four officers gave conflicting commands to the five fishermen.

35.     As one officer shouted at the five fishermen to "get your hands up" he immediately then demanded "get your hands down".

7

36.     The conflicting commands by the officer while pointing a loaded firearm increased the fear of the fisherman that a failure to comply with either command would result in being shot.

37.     The officers' unlawful commands to submit to police authority interfered with and prevented the lawful taking of fish by the Citizens in violation of Sec 379.105, Fla Stat

38      All four officers had firearms drawn.

39.     Garcia, Villamil, and Rivera all pointed firearms pointed directly at one or more of the five fishermen.

40      The senior officer on scene, Bolduc, appeared to keep his firearm at a "low ready" position in hand rather than pointing it directly at any particular Plaintiff.

41      The police officers then proceeded to seize and handcuff four of the fishermen.

42.     While handcuffing four of the fishermen, all five fishermen on the pier were searched and deprived of property.

43      Immediately following the armed assault on the Citizens, more officers began arriving at the fishing venue

44.     Eventually, approximately twenty officers would be present at the fishing venue

8

45.     At the time that the firearms were pointed at the fishermen, the officers had no reasonable articulable suspicion that any crime had been, was being, or was about to be committed.

46.     While the first four officers were detaining and handcuffing five of the fishermen; a sixth fisherman, Jonah Weiss, arrived at the fishing pier.

47.     Weiss similarly had firearms pointed at him by officers, Garcia and Rivera.

48.     Garcia handcuffed, disarmed, and searched Weiss.

49.     After being disarmed by the officers, Weiss was also detained and required to move to the location of the other five fishermen.

50.     At no time during the events complained of herein, did any of the fisherman violate any law or regulation of the United States or the State of Florida.

51.     At no time during the events complained of herein, did any of the fishermen violate any valid ordinance of the City of Miami Beach or Miami-Dade County.

52.     After several of the Citizens were handcuffed, all six were required to sit down.

53.     At no time from the pointing of firearms at the six Citizens, until approximately two hours and twenty-six minutes later, were the citizens free to leave.

54.   All five-armed Citizens' firearms were seized by officers of the Miami Beach Police Department.

55   Devine had not previously attended any meetups or events affiliated with Florida Carry.

56   Devine owned firearms

57   Devine was not in possession of any firearms at the time of the events complained of herein.

58.   Devine had come to the pier to fish and to learn about his rights under Florida law.

59   Devine was uncomfortable carrying a firearm openly because he was not fully aware of his rights under Florida law.

60.   Devine attended with the express purpose of learning more about his rights.

61.   Devine intended to learn more about open carry and to assemble with likeminded individuals in an environment where he could expand his knowledge of firearms law.

62   Devine was also present to learn more about Florida Carry and its efforts and to determine whether he should become a member

63.   Plaintiff Devine's knife was seized by officers of the Miami Beach Police Department

64.    Officers also seized other property, including but not limited to, lawfully carried knives, ammunition, magazines containing ammunition, and individual Plaintiffs' concealed weapons firearms licenses.

65.    The individuals in handcuffs (Taylor, Jenkins, Guiterrez, and Philpot) remained in handcuffs for approximately one hour and eighteen minutes.

66.    All of the Citizens were detained for approximately two hours and twenty-six minutes, including the time they were handcuffed and detained while awaiting the return of their property after the removal of handcuffs.

67.    While the Citizens were detained Defendant Officers engaged in their own fishing expedition in an attempt to justify their treatment of Plaintiffs.

68.    Defendant Officers' fishing expedition was unlawful and resulted in multiple violations of Plaintiffs' rights.

69.    Senior officers on scene sent other officers to look for, and take pictures of, any signs prohibiting the possession of firearms on the pier.

70.    While the Citizens were detained, one or more Defendant Officers were directed by another officer to take photographs of all the Citizens' firearms, including the serial numbers of the firearms.

71.    Officers were directed by senior officers to take pictures of any concealed weapon firearms licenses that had been seized.

72.    Defendant Officers searched Plaintiffs' coolers.

11

73.     Defendant Officers verified each Plaintiff's fishing license.

74.     Defendant Officers verified the Concealed Weapons Firearms License for those Plaintiffs in possession of such a license.

75.     The seizure of the five Plaintiffs' firearms to allow the officers to see the serial numbers of the firearms constituted an impermissible search.  See, *Arizona v. Hicks*, 480 U.S. 321 (1987).

76.     Defendant Officers ran the serial number of each firearm possessed by Plaintiffs.

77.     The running of each firearm's serial number constituted a search.

78.     Defendant Officers access to the serial numbers of the firearms was a result of the removal of the lawfully carried firearms from holsters.

79.     The serial numbers of the firearms were not visible to the Defendant Officers until the officers engaged in the unlawful seizure of Plaintiffs firearms.

80.     Defendant Officers had no reasonable suspicion or probable cause to believe that any of the firearms were stolen.

81.     After Defendant Officers determined that there was no basis for detention of Plaintiffs, the handcuffs were taken off the four Citizens that were previously handcuffed.

82.     Even after removal of the handcuffs and determining that that no law had been violated, Defendant Officers continued to detain all six Citizens.

83.    The continued detention was effective because no officer indicated that the six Citizens were free to leave.

84.    Even if the individuals had been free to leave, Defendant Officers continued to detain the property of all six Citizens.

85.    After the officers had confirmed that no crime had been committed, Weiss specifically requested the return of his firearm and was threatened by Lt. Garcia with having his phone unlawfully seized as well.

86.    After release, Defendants required that the Citizens not return to the public fishing pier, further interfering with and preventing the lawful taking of fish from a state-managed water body.

87.    The Citizens were all required to open their vehicles, forcing them to consent to a partial search of their vehicle under plain view doctrine, as a condition of obtaining the return of their property.

88.    All firearms were stripped of ammunition.

89.    Likewise, all magazines for each Citizen's firearm were removed and all ammunition was removed from the magazines and placed in latex gloves; leaving the Citizens defenseless and unable to exercise their right to bear arms.

90.    The Citizens were denied their right to continue fishing on the pier and officers refused to give clear guidance as to where they could and could not fish if they chose to remain.

91.    Officers further intimated that if Citizens returned to fishing, they may be disarmed and held again if a "man with a gun" complaint was made to police.

92.    While he was being detained, one or more officers falsely accused Plaintiff Taylor of being intoxicated or smelling of alcoholic beverages.

93.    The statement by the officer(s) was for the purpose of continuing to justify the fishing expedition of the Defendant Officers.

94.    On or about July 6, 2018 Plaintiffs provided notice of a claim against Defendants pursuant to Sec. 776.28, Fla. Stat.

95.    Plaintiffs suffered damages during as a result of the Defendants conduct.

96.    All individual Plaintiffs suffered varying degrees of infliction of emotional distress as a result of the Defendants' conduct.

97.    The emotional distress was a result of having firearms pointed at them, being handcuffed, being detained, being detained for an excessive period of time, being assaulted, being battered, embarrassment of their public detention, having their personal information being entered into police intelligence databases, and being deprived of their basic rights as citizens.

98.    All individual Plaintiffs suffered varying degrees of fear and mental anguish as a result of having loaded firearms pointed at them and by being denied their fundamental rights and liberty and property interests.

99.    All individual Plaintiffs were damaged by being assaulted and battered

100.   The Citizens were subjected to warrantless searches of their property including their coolers, vehicles, and persons

101    The Citizens were damaged by being denied their right to assemble in violation of the First Amendment

102    The Citizens were damaged by being forced to consent to a plain view search of their open vehicle as a condition for the return of their unlawfully seized property.

103.   The Citizens were damaged by being denied their right to carry a loaded firearm for their protection due to Defendants unloading their firearms and placing them into vehicles, and requiring the Citizens wait until Defendant Officers departed the area before allowing the Citizens to exercise their Second Amendment and Art I, Sec 8 rights, as well as their rights under Sec. 790.25, Fla Stat

104.   Plaintiff Florida Carry was damaged by interference by Defendants with its lawful event and the threat to its members and the associational rights of its members

105.   According to a statement by Oates following the incident, "given the current climate, if six people show up to a pier in South Beach carrying guns, our

citizens expect us to respond promptly and address any potential danger.  We did so and I am confident our officers acted appropriately."

106.   The Mayor of Miami Beach, Dan Gelber (Gelber), similarly stated that he "very proudly" stands behind the police officers who did "precisely what they ought to do."

107    Gelber derisively stated, "Our court system allows any idiot to file anything no matter how asinine. This appears to be one of those instances".

108    Gelber's statement demonstrates that he also supported and ratified the Officers' conduct.

109.   From the very outset of the detention, and weeks prior to the fishing trip, Plaintiffs attempted to inform Defendants that Plaintiffs were acting lawfully

110.   Plaintiffs had in their possession copies of the relevant law to demonstrate to officers that Plaintiffs had an affirmative right to engage in the very conduct at issue

111.   Defendant Officers initially failed or refused to review the relevant statutory law.

112.   When Officers did review the law, they failed to do adequate investigation or research to properly apply and enforce the relevant well-established laws of Florida

**COUNT 1- Violation of Sec. 790.33 by City of Miami Beach**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

113.   The Legislature has authority to preempt the local regulation of firearms as well as any other field not expressly reserved to local authorities.  See Art. VIII, Secs. 1(f), (1g), 2(b), Fla. Const.

114.   Any contrary rule would allow Defendant City to "frustrate the ability of the Legislature to set policies for the state." *Metro. Dade Cty. v. Chase Fed. Hous. Corp*, 737 So.2d 494, 504 (Fla. 1999).

115.   Miami Beach was well aware of the provisions of Sec. 790.33, Fla. Stat., on June 24, 2018.

116.   On April 2, 2018, Defendant City of Miami Beach filed suit in Leon County, Florida to have the provisions of 790.33, Fla. Stat. declared unconstitutional.

117.   Despite the City's and its officials express knowledge of the provisions of Sec. 790.33 it continued to violate those provisions on June 24, 2018.

118.   Defendant City specifically alleges in the suit that specifically desired to restrict "guns in municipal-owned facilities and parks, the placing of signs relating to guns in municipal-owned facilities and parks". (Defendant's Preemption Suit at Para. 33; Leon County Case No.: 37-2018-CA-000699).

17

119.   Despite its admitted knowledge that it was without authority to restrict firearms, or post signs restricting firearms, Defendant City did so anyway.

120.   Miami Beach has a policy, whether written or unwritten, of detaining lawfully armed citizens.

121.   This policy applies regardless of whether the individual is committing any violation of law.

122.   City of Miami Beach has a policy, whether written or unwritten, of disarming armed citizens during interactions with law enforcement without any requisite determination of a particularized danger.

123.   City of Miami Beach has a policy of prohibiting the lawful possession of firearms on the South Pointe Pier by posting sign(s) prohibiting firearms on the pier.

124.   By his statement ratifying the conduct of the Officers, Chief Oates indicated that the Defendant Officers acted in compliance with department policy in detaining and disarming the fishermen on the pier, including handcuffing the individuals for an excessive amount of time.

125.   Defendant Officers in this case acted in reliance upon departmental policy and the illegal sign(s) prohibiting the possession of firearms on the pier, rather than statutory law, to detain the Citizens and deprive them of their legal right to bear arms.

18

126.   Law-abiding citizens, whether armed or unarmed, have a constitutional right and liberty interest not to be detained without reasonable articulable suspicion of a crime.

127.   Armed law-abiding citizens have a constitutional right not to be deprived of their property, even temporarily, unless there is a reasonable articulable suspicion that they are dangerous.

128.   Being armed does not necessarily establish the dangerousness of the individual for the purposes of a *Terry* stop  See *Arizona v. Johnson*, 555 U.S  323 (2009).

129   Miami Beach's policies of detaining and disarming armed citizens is a violation of the citizen's constitutional rights

130.   Miami Beach's policies of detaining and disarming armed citizens is a policy established contrary to the laws of the State of Florida regarding firearms See, *Mackey v. State*, 124 So.39 176 (Fla. 2013).

131.   The City of Miami Beach has a policy of refusing to return firearms to persons who have committed no crime except in a completely unusable condition.

132.   The return of a firearm in an unloaded condition renders the firearm worthless for purposes of self-defense

133.   Miami Beach's policies resulted in a deprivation of the individual Plaintiffs' First Amendment right to assemble.

134    Miami Beach's policies resulting in a deprivation of the Plaintiffs' right of association.

135.    Miami Beach's policies resulted in a deprivation of the individual Plaintiffs' right to possess firearms pursuant to Chapter 790, Fla Stat

136    Miami Beach's policies resulted in a deprivation of the individual Plaintiffs right to bear arms in defense of themselves and the lawful authority of the state pursuant to Art I, Sec. 8, Fla. Const

137.    Miami Beach has failed to train its officers regarding the relevant statutory and case law regarding the lawful possession of firearms.

138.    Miami Beach has failed to properly train its officers to read Florida state statutes in order to understand the rights of citizens to openly carry firearms while engaged in lawful fishing.

139.    Defendant City has attempted to enforce a ban on the lawful possession of firearms on the South Pointe Pier by continuing to maintain sign(s) that prohibits lawful conduct protected by state law, in violation of Sec. 790.33.

140.    Defendant Officers as agents of Defendant City enforced Defendant City's prohibition on firearms on the South Pointe Pier in reliance upon the signage as evidence of Defendant City's policy against possession of firearms on the South Pointe Pier

141.   Defendant Oates and Mayor Gelber both ratified the conduct of the officers as being in accordance with the policies of the City of Miami Beach.

WHEREFORE, the City of Miami Beach has enacted the above set forth written and unwritten policies in violation of the statewide preemption for the ownership, possession, and transportation of firearms and ammunition. Plaintiffs request an award of damages, attorneys' fees, costs, and all other relief deemed just and equitable.  Additionally, Plaintiffs request declaratory and injunctive relief that Defendants have violated Sec. 790.33, Fla. Stat., and prohibiting the Defendants from maintaining any policy to detain or disarm law abiding citizens without at least reasonable suspicion of criminal activity from regulating the possession of firearms in any manner, and from maintaining any sign which purports to ban the possession of firearms where it is allowed by state law.

**COUNT 2- Violation of Sec. 790.33, Fla. Stat. by Jimmy Morales**

Plaintiffs re-allege paragraphs 1 through 141 as if set forth in full and further allege:

142.   Jimmy Morales, the City Manager of Miami Beach, Florida, is sued in his individual capacity, pursuant to Sec. 790.33, Fla. Stat.

143.   Jimmy Morales was the City Manager during all of the events and occurrences herein.

21

144   As the City Manager, Morales was an appointed official with authority over the Officers who detained, disarmed, and otherwise violated the rights of the Citizens.

145   Morales as the City Manager had authority over the conduct of the Defendant Officers.

146.   The acts of the Defendant Officers were within and under the jurisdiction of Morales.

147   Sec. 790.33(3)(c), Fla. Stat , specifically provides that an official or officials may be fined for knowing and willful violations occurring under their jurisdiction.

148   The violations of Sec. 790 33 herein were knowing and willful by the individuals who committed the violations.

149   Morales was an appointed local governmental official under whose jurisdiction the knowing and willful violations set forth in Count 2 occurred.

150   The Officers who committed the violations knew or should have known that they were without authority to rely on any policy, rule, procedure, ordinance or sign promulgated or published by the City of Miami Beach which in any way impaired the rights of law-abiding citizens to bear arms in defense of themselves or the states

151.   The Officers knew or should have known that any signs prohibiting the possession of firearm or ammunition on a city pier were not legally valid and could not be relied upon.

152.   The Officers knew or should have known that any city ordinance prohibiting possession of firearms or ammunition was preempted or had been repealed.

153.   The Officers knew or should have known that the persons in possession of firearms or ammunition while fishing were acting within their lawful rights as citizens.

154.   The Officers knew or should have known that they were without authority to disarm or detain peacefully and lawfully armed persons acting within their rights under state law.

155.   The Officers knew or should have known that persons fishing while openly carrying firearms were acting lawfully.

156.   The Officers acted with reckless disregard in disarming lawfully armed citizens in violation of their rights under the Florida and U.S. Constitutions.

157.   The Officers recklessly disregarded the rights of the citizens to be armed in defense of themselves and the lawful authority of the state by disarming the Citizens and leaving them without operable firearms.

158.   The violations of the rights of law-abiding gun owners and the violation of their right to be armed was in violation of the statewide preemption of firearms laws.

159.   The violations of the rights of the Citizens by the Defendant Officers was knowing and willful.

160.   The knowing and willful violations by the Defendant Officers occurred under the jurisdiction of Morales his capacity as one of the appointed or elected officials under whose jurisdiction the knowing and willful conduct of the officers occurred.

WHEREFORE, Plaintiffs request a determination that the violations of Sec. 790.33 by the Defendant Officers was knowing and willful, and that said violations occurred under the jurisdiction of Morales as an appointed local governmental official under whose jurisdiction the violation occurred, and requests the Court asses a civil fine against Morales in the amount of $5,000.00.

**COUNT 3- Violation of Sec. 790.33, Fla. Stat. by Dan Oates**

Plaintiffs re-allege paragraphs 1 through 141 as if set forth in full and further allege:

161.   Dan Oates, the Chief of Police of the Miami Beach Police Department, is sued in his individual capacity, pursuant to Sec. 790.33, Fla. Stat.

162.   Dan Oates was the Chief of Police of the Miami Beach Police during all the events and occurrences herein.

163.   As the Chief of Police, Oates was an appointed official with authority over the Officers who detained, disarmed, and otherwise violated the rights of the Citizens.

164.   Sec. 790.33(3)(c), Fla. Stat., specifically provides that an official or officials may be fined for knowing and willful violations occurring under their jurisdiction.

165.   The violations of Sec. 790.33 herein were knowing and willful by the individuals who committed the violations.

166.   Oates was an appointed local governmental official under whose jurisdiction the knowing and willful violations set forth in Count 2 occurred.

167.   The violations of Sec. 790.33 herein were knowing and willful by the individuals who committed the violations.

168.   Sec. 790.33(3)(c), Fla. Stat., specifically provides that an official or officials may be fined for knowing and willful violations occurring under their jurisdiction.

169.   The Officers who committed the violations knew or should have known that they were without authority to rely on any policy, rule, procedure, ordinance or sign promulgated or published by the City of Miami Beach which in

any way impaired the rights of law-abiding citizens to bear arms in defense of themselves or the states

170   The Officers knew or should have known that any signs prohibiting the possession of firearm or ammunition on a city pier were not legally valid and could not be relied upon

171.   The Officers knew or should have known that any city ordinance prohibiting possession of firearms or ammunition was preempted or had been repealed.

172.   The Officers knew or should have known that the persons in possession of firearms or ammunition while fishing were acting within their lawful rights as citizens.

173.   The Officers knew or should have known that they were without authority to disarm or detain peacefully and lawfully armed persons acting within their rights under state law

174.   The Officers knew or should have known that persons fishing while openly carrying firearms were acting lawfully.

175   The Officers acted with reckless disregard in disarming lawfully armed citizens in violation of their rights under the Florida and U.S  Constitutions.

176    The Officers recklessly disregarded the rights of the citizens to be armed in defense of themselves and the lawful authority of the state by disarming the Citizens and leaving them without operable firearms.

177.    The violations of the rights of law-abiding gun owners and the violation of their right to be armed was in violation of the statewide preemption of firearms laws.

178    The violations of the rights of the Citizens by the Defendant Officers was knowing and willful

179.    Oates ratified the conduct of the Officers by his statement, indicating his full support for the officer's actions.

180.    The knowing and willful violations by the Defendant Officers occurred under the jurisdiction of Oates his capacity as one of the appointed or elected officials under whose jurisdiction the knowing and willful conduct of the officers occurred.

181.    Oates further ratified the conduct of the Defendant Officers by his statements.

WHEREFORE, Plaintiffs request a determination that the violations of Sec. 790 33 by the Defendant Officers was knowing and willful, and that said violations occurred under the jurisdiction of Oates as an appointed local governmental

official under whose jurisdiction the violation occurred, and requests the Court asses a civil fine against Oates in the amount of $5,000.00

**COUNT 4- Violation of Civil Rights of Devine, Weiss, Guiterrez, and Philpot Under Color of Law by Officers Garcia, Bolduc, Villamil, Rivera, Hicks and Mitchell.**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

182.   This Count is brought pursuant to 42 U.S.C. Sec. 1983.

183.   Officers, Garcia, Villamil, and Rivera violated the rights of Devine, Wiess, Guiterrez, and Philpot (within this Count collectively, "the Citizens"), by committing an assault, including the unlawful pointing of loaded firearms at the Citizens.

184.   Officer Bolduc violated the rights of the Citizens by assisting and providing cover for Garcia, Villamil, and Rivera while they committed the assault on Plaintiffs.

185.   Officer Bolduc instructed and directed the assault that was committed on Plaintiffs.

186.   The assault committed by against Jenkins, Taylor, Devine, Guiterrez and Philpot by Garcia, Villamil, and Rivera and directed by Bolduc was without legal justification.

187.   The assault committed against Weiss by Garcia and Rivera was without legal justification.

188.   The battery of Weiss by Garcia was without legal justification.

189.   The deprivation of Weiss's property was without legal justification.

190.   The search of Weiss was without legal justification.

191.   Officers Garcia violated the rights of Weiss, Guiterrez, and Philpot by committing battery on them while handcuffing them.

192.   Officer Garcia violated the rights of Weiss, Guiterrez, and Philpot by depriving them of their property.

193.   Officer Garcia violated the rights of Weiss, Guiterrez, and Philpot by depriving them of their right to bear arms under the Second Amendment.

194.   Officer Garcia violated the rights of Weiss and Philpot by searching them.

195.   Officer Mitchell violated the rights of Devine by searching Devine.

196.   Officer Hicks violated the rights of Guiterrez by searching Guiterrez.

197.   There was no legal justification for depriving Weiss, Guiterrez, or Philpot of their property.

198.   There was no legal justification for searching Weiss, Guiterrez, Philpot, or Devine.

199.   Garcia, Bolduc, Villamil, and Rivera knew or should have known that there was no reasonable articulable suspicion on which to base a detention of the Citizens.

200.   Garcia, Bolduc, Villamil, Hicks, Mitchell, and Rivera knew or should have known that it was well established that detaining an individual without reasonable articulable suspicion of a crime was a violation of the Citizens' rights to be free from unlawful search and seizure.

201.   Garcia, Bolduc, Villamil, Hicks, Mitchell, and Rivera knew or should have known that the mere possession of a firearm by a citizen, without more, could not form a reasonable articulable suspicion that the citizen was engaged in criminal conduct.

202.   Garcia, Bolduc, Villamil, Hicks, Mitchell and Rivera knew of should have known that depriving a person of their fundamental right to bear arms without reasonable articulable suspicion of criminal activity was a violation of the Citizens' right to bear arms.

203.   Garcia, Bolduc, Villamil, Hicks, Mitchell, and Rivera knowingly or with reckless disregard of the rights of the Citizens violated the rights of the Citizens under color of their authority.

204.   Devine, Weiss, Guiterrez, and Philpot all suffered infliction of emotional distress, mental anguish, embarrassment in addition to the deprivation of their constitutional rights by Garcia, Bolduc, Villamil, and Rivera.

205.   Garcia, Bolduc, Villamil, and Rivera knowingly or with reckless disregard of the rights of Florida Carry, interrupted its event preventing the exercise of Florida Carry and its members' and supporters' rights of freedom of association.

206.   Florida Carry was damaged by the fact that persons might be fearful to associate with Florida Carry out of fear of having firearms pointed at them, being detained, and being unlawfully searched.

207.   Defendant Officers violated Citizens rights to engage in the lawful taking of game fish and committed a criminal violation of Florida law in so doing.

WHEREFORE, Plaintiffs request the Court award damages for the violations of Plaintiffs rights by the Defendant Officers, injuries suffered by Plaintiffs, attorneys' fees costs and all other relief deemed just and equitable by the Court.

**COUNT 5- Violation of Taylor's Civil Rights under Color of Law by Villamil.**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

208   This Count is brought pursuant to 42 U.S C  Sec  1983.

209.   Villamil detained Taylor

210   Villamil had no legal basis to detain Taylor.

211.   Villamil placed Taylor in handcuffs.

212.   Villamil had no legal basis to handcuff Taylor.

213.   Villamil seized property belonging to Taylor.

214.   Villamil had no legal basis to seize Taylor's property.

215.   Villamil seized Taylor's firearm

216.   Taylor's firearm was lawfully carried

217.   Villamil had no legal basis to disarm Taylor.

218   Villamil's seizure of Taylor's firearm was in violation of Taylor's right to bear arms

219.   Villamil placed Taylor in handcuffs without any legal justification for a detention of Taylor

220.   During the battering and handcuffing of Taylor, Villamil used excessive force.

221.   At no time did Taylor resist Villamil in any way.

222.   The excessive force used by Villamil resulted in permanent physical injury to Taylor.

223.   The placing of handcuffs on Taylor without any reasonable suspicion, much less probable cause, was in and of itself excessive force.

224.   Additionally, Villamil used more force than was necessary in the detention of Taylor who was clearly stating his intent verbally to cooperate with all commands of the officers.

225.   The application of this excessive force resulted in permanent injuries to Taylor.

226.   The injury to Taylor resulted in damages for which Officers Villamil is liable.

WHEREFORE Taylor request an award of damages against the above-named officer for deprivation of Taylor's rights under color of law, and for excessive force resulting in permanent injuries to Taylor, including economic and non-economic damages, and all other relief deemed just and equitable by the Court.

**COUNT 6- Violation of Jenkins' Civil Rights under Color of Law by Rivera.**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

227.   This Count is brought pursuant to 42 U.S.C. Sec. 1983.

228.   Rivera detained Jenkins.

229.    Rivera had no legal basis to detain Jenkins.

230.    Rivera placed Jenkins in handcuffs.

231.    Rivera had no legal basis to handcuff Jenkins.

232.    Rivera seized property belonging to Jenkins.

233.    Rivera had no legal basis to seize Jenkins's property.

234.    Rivera seized Jenkins's firearm.

235.    Jenkins's firearm was lawfully carried.

236.    Rivera had no legal basis to disarm Jenkins.

237.    Rivera's seizure of Jenkins's firearm was in violation of Jenkins's right to bear arms.

238.    Rivera placed Jenkins in handcuffs without any legal justification for a detention of Jenkins.

239.    During the battering and handcuffing of Jenkins, Rivera used excessive force.

240.    At no time did Jenkins resist Rivera in any way.

241.    The excessive force used by Rivera resulted in permanent physical injury to Jenkins.

242.    The placing of handcuffs on Jenkins without any reasonable suspicion, much less probable cause, was in and of itself excessive force.

243.   Additionally, Rivera used more force than was necessary in the detention of Jenkins who was clearly stating his intent verbally to cooperate with all commands of the officers.

244.   The application of this excessive force resulted in permanent injuries to Jenkins.

245.   The injury to Jenkins resulted in damages for which Officer Rivera is liable.

WHEREFORE Jenkins request an award of damages against the above-named officer for deprivation of Jenkins's rights under color of law, and for excessive force resulting in permanent injuries to Jenkins, including economic and non-economic damages, and all other relief deemed just and equitable by the Court.

**COUNT 7- Violation of Civil Rights Under Color of Law of all Plaintiffs by Officers Garcia, Bolduc, Villamil, Rivera, Er. Vidal, Cano, Salabarria, Mitchell, Bicelis, Hicks, El. Vidal and Lt. Eduardo Garcia.**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

246.   This Count is brought pursuant to 42 U.S.C. Sec. 1983.

247.   Plaintiffs were denied their right to be free and were deprived of their liberty interest by Defendant Officers.

248.   All Defendant Officers participated in the continued unlawful detention of the Citizens after they were placed in handcuffs and searched.

249.   All Defendant Officers violated the liberty interest of the Plaintiffs to be free from continued detention and from unlawful search and seizure of their property and their persons.

250.   Defendant Officers failed to take sufficient steps to protect Taylor from further injury while in their custody, even after repeated attempts by Taylor to inform the Officers of the pain he was suffering.

251.   All Defendant Officers had an obligation to take steps to prevent further injury to Taylor by protecting him from injury while suffering a custodial detention, especially a custodial detention that was illegal from the outset.

252.   Even after contacting emergency medical services, who were not sufficiently trained to diagnosis an injury that might have occurred or be occurring at the time, Defendant Officers failed to take any steps to relieve the pain or further injury being caused by the placement of the handcuffs.

253.   Defendant Officers knew or should have known that there was no reasonable articulable suspicion on which to base a continued detention of the Citizens.

254.   Defendant Officers knew or should have known that it was well established that continuing to detain an individual without reasonable articulable suspicion of a crime was a violation of the Citizens' rights to be free from unlawful search and seizure.

255.   Defendant Officers knew or should have known that the mere possession of a firearm by a citizen, without more, could not form a reasonable articulable suspicion that the citizen was engaged in criminal conduct.

256.   Defendant Officers knew of should have known that depriving a person of their fundamental right to bear arms without reasonable articulable suspicion of criminal activity was a violation of the citizen's rights to be free from unlawful seizure of their property.

257.   Defendant Officers knowingly or with reckless disregard of the rights of the Citizens violated the rights of the Citizens under color of their authority.

258.   Defendant Officers knowingly or with reckless disregard of the rights of Florida Carry and its members and supporters, interrupted Florida Carry's event preventing the exercise of Florida Carry and its members' and supporters' rights of freedom of assembly and association.

259.   Defendant Officers further knowingly or with reckless disregard of the rights of Florida Carry and its members and supporters, interrupted its event preventing the exercise of Florida Carry and its members' and supporters' rights of

freedom of assembly and association by closing the fishing pier until all members and supporters of Florida Carry had left South Pointe Park.

260.   Defendant Officers violated Citizens rights to engage in the lawful taking of game fish and committed a criminal violation of Florida law in so doing.

WHEREFORE, Plaintiffs request the Court award damages for the violations of Plaintiffs rights by the Defendant Officers, injuries suffered by Plaintiffs, attorneys' fees costs and all other relief deemed just and equitable by the Court.

**COUNT 8- Violation of Civil Rights under Color of Law by the City of Miami Beach**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

261.   This Count is brought pursuant to 42 U.S.C. Sec. 1983.

262.   Defendants Morales and Oates are policy makers for the City of Miami Beach.

263.   As the appointed City Manager and appointed police chief respectively, they establish rules, procedures, and policies and are responsible for the training of Defendant Officers.

264    As already set forth, Oates ratified the Defendant Officers' conduct in this case by his statements as set forth above.

265    The Mayor of Defendant Miami Beach, Dan Gelber, similarly ratified the Defendant Officers' actions by his statements as set forth above

266    Defendants Oates and City of Miami Beach were sent prior notice of the legality of fishing while openly carrying firearms to the City Attorney and to Oates.

267.    Despite knowledge of the event and advanced knowledge of Plaintiffs intended conduct, Defendant failed to take any action to properly inform its officers of the event that was to be held

268.    Defendants knew or should have known of a prior instance in Florida where the City of Tampa's police officers illegally detained a fisherman.

269.    Defendants knew or should have known that in a prior similar instance in Tampa, officers improperly detained a fisherman who was open carrying

270    Defendants knew or should have known that police officers for the City of Tampa improperly issued a trespass warning against a fisherman who was openly carrying.

39

271.   Despite knowledge of the event to be held, Defendant City failed to properly train its officers regarding Florida Law regarding the lawful possession of firearms by law-abiding citizens.

272.   Defendants failed to properly train officers to read and interpret state statutes and case law to determine whether conduct was lawful or unlawful.

273.   Based on the statement of Oates, the city has a policy of depriving persons of their fundamental individual right to bear arms.

274.   Defendant allowed its Officers to engage in criminal conduct by interfering with the lawful taking of game fish, a protected right under state law, by shutting down a city pier in response to lawful fishing activity by armed persons.

275.   Defendant City allowed its officers acting in reliance upon city policy to interfere with Plaintiffs' lawful freedom of association by closing the pier despite no violation of law.

276.   Defendant City allowed it officers acting in reliance upon city policy to interfere with Plaintiffs' lawful freedom of assembly by closing the pier despite no violation of law.

277.   Defendant City allowed it officers acting in reliance upon city policy to interfere with Plaintiffs' lawful right to bear arms.

278.   Defendant City allowed it officers acting in reliance upon city policy to interfere with Plaintiffs' right to be free of unlawful searches.

279. Defendant City allowed it officers acting in reliance upon city policy to interfere with Plaintiffs' right to be free of unlawful seizures of their persons.

280. Defendant City allowed it officers acting in reliance upon city policy to interfere with Plaintiffs' right to be free of unlawful seizures of their property.

281. The City ratified the Defendant Officers' actions by failing to take immediate steps to remedy the violations of the Citizens' rights.

282. The statements of Mayor Gelber and Defendant Oates demonstrate that the officers were acting within the approved policies and procedures of the Defendant City of Miami Beach.

283. The statements of Mayor Gelber and Oates constitute a ratification of the Defendant Officers' conduct on behalf of the City of Miami Beach.

284. The City violated the rights of the Citizens to be free from deprivation of their liberty interest.

285. The City violated the rights of Citizens to be free from unreasonable searches and seizures of their persons, their property, and vehicles.

286. The City violated Plaintiffs' First Amendment rights of free speech, assembly, and freedom of association.

287. The City violated the Citizens' rights to keep and to bear arms.

WHEREFORE, Plaintiffs request an award of damages for all injuries suffered by the Plaintiffs as a result of the violation of their rights, including

41

physical and emotion injuries, clearing and deleting of all records created by Defendants regarding the Plaintiffs to include any records of firearms owned by Plaintiffs, deleting of all records regarding allegations that Plaintiffs are sovereign citizens including any records transmitted to any other entity of the state of Florida, attorneys' fees and costs and all other relief deemed just and equitable by the Court.

**COUNT 9- Conspiracy to interfere with civil rights of Plaintiffs, by Defendant City of Miami Beach and Defendant Officers Garcia, Bolduc, Villamil, Rivera, Er. Vidal, Cano, Salabarria, Mitchell, Bicelis, Hicks, El. Vidal and Lt. Eduardo Garcia.**

Plaintiffs re-allege paragraphs 1 through 112 and paragraphs 182 through 287 as if set forth in full and further allege:

288.   This action is brought pursuant to Sec. 42 U.S.C. Sec. 1985.

289.   Defendant Officers conspired to deprive both the individual Plaintiffs and Florida Carry, of their rights and their equal privileges and immunities under the laws.

290.   Defendant Officers conspired to violate Plaintiffs' First Amendment right to assemble.

291.   Defendant Officers conspired to violate Plaintiffs' First Amendment right to associate.

42

292.   Defendant Officers closed a public venue for no reason other than their disagreement with the reason the Plaintiffs were assembled.

293.   Defendant Officers desire to restrict Plaintiffs' assembly was content based.

294.   As evidence of the content-based restriction, in weeks prior to the violations of Plaintiffs' rights, Defendant City sponsored and hosted a demonstration by "March for our Lives". (Miami Beach Resolution 2018-30241)

295.   March for Our Lives is an organization created to oppose the rights of Plaintiffs.

296.   Defendant City waived all special event permit fees, user fees, square footage fees, and administrative fees of any kind for their event, authorized the solicitation of cash and in-kind solicitations by Gelber and members of the City Commission to offset costs.

297.   The March for our Lives event which the City was a sponsor for required the closure of city streets by Defendant City and resulted in a loss of revenue to the City.

298.   Defendants conspired to violate Plaintiffs' Second Amendment right to bear arms.

299.   Defendant Officers acting on behalf of Defendant City conspired to deprive Plaintiffs of a location where they could lawfully assemble while openly bearing arms.

300.   Defendants violated Plaintiffs' expressive speech by engaging in a content-based restriction.

301.   Defendants' closing of the pier was intended by Defendants to prevent Plaintiffs from expressing and exercising their rights and opinions of which the City disapproved as demonstrated by its sponsorship of the March for our Lives and its lawsuit to have Sec. 790.33 declared unconstitutional.

302.   Defendant Oates and Mayor Gelber ratified the conduct of the Defendant Officers by their statements.

303.   Plaintiffs were injured as a result of Defendants' conspiracy to violate their rights.

304.   Plaintiffs were deprived of their rights and property by Defendants.

WHEREFORE, Defendants individually and collectively conspired to deny the Plaintiffs' First and Second Amendment rights to associate, assemble, and bear arms and suffered damages as a result of the conspiracy to deprive Plaintiffs of their rights.  Plaintiffs request compensation for the deprivation of their rights, damages for the injuries suffered, attorneys' fees, costs, and all other relief deemed just and equitable.

**COUNT 10- False Imprisonment of Taylor, Jenkins, Devine, Weiss, Guiterrez, and Philpot by Defendant Officers.**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

305.    Defendant Officers Garcia, Villamil, and Rivera, with the assistance of Bolduc knowingly and willfully detained the Citizens, at gunpoint

306.    All Defendants Officers participated in the continued detention of the Citizens after they were initially detained.

307.    Defendant Officers had no legal basis for the detention of the Citizens.

308.    The detention of the Citizens was without the Citizens' consent.

309.    The detention of the Citizens was without lawful authority.

WHEREFORE, Plaintiffs requests an award of damages and all other relief deemed just and equitable by the Court.

**COUNT 11- Assault on Taylor, Jenkins, Devine, Weiss, Guiterrez, and Philpot by Officers Garcia, Villamil, and Rivera**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

45

310.   Officer Garcia, Villamil, and Rivera pointed loaded firearms at the Citizens.

311.   The pointing of firearms at the Citizens was an intentional threat to inflict injury on the Citizens.

312.   The presence of Garcia, Villamil, and Rivera's loaded firearms in their hands and pointed at the Citizens demonstrated that the officers had the apparent ability to cause harm to the Citizens.

313.   The Citizens had a reasonable apprehension of bodily harm, including death, due to the pointing of the Officers' loaded firearms.

314.   The Citizens have all suffered damages as a result of the assault, including but not limited to mental anguish, fright

WHEREFORE, Plaintiffs requests an award of damages and all other relief deemed just and equitable by the Court.

**COUNT 12- Battery on Taylor, Jenkins, Devine, Weiss, Guiterrez, and Philpot by Officers Garcia, Villamil, Rivera, Hicks, Mitchell and Bolduc**

Plaintiffs re-allege paragraphs 1 through 112 as if set forth in full and further allege:

315.   Officers Garcia, Villamil, Rivera, Hicks, Mitchell and Bolduc committed battery on the Citizens.

46

316.   Each Citizen was harmfully or offensively contacted by one of the identified officers.

317.   Taylor was battered by Villamil

318.   Jenkins was battered by Rivera

319.   Devine was battered by Mitchell

320.   Weiss was battered by Garcia

321.   Guiterrez was battered by Garcia and Hicks.

322.   Philpot was battered by Garcia.

323.   The Officers had no legal basis to touch any of the Citizens.

324.   Each of the Citizens' was damaged as a result of the harmful and offensive touching by the officers.

325.   The Citizens all suffered infliction of emotional distress, mental anguish, embarrassment, and pain in the commission of the battery by the officers.

326.   Plaintiffs Taylor, Jenkins, Philpot, and Guiterrez, were further battered by placing them in handcuffs for approximately one and one-half hours.

327.   Additionally, Plaintiffs Taylor and Jenkins suffered permanent physical injuries as a result of the battery by the above-named officers.

WHEREFORE, Plaintiffs request an award of damages against the Defendants named in this Count, and all other relief deemed just and equitable by the Court.

COUNT 13- **Respondent Superior Liability for Assault, Battery, and False Imprisonment of Taylor, Jenkins, Devine, Weiss, Guiterrez, and Philpot against City of Miami Beach.**

Plaintiffs re-allege paragraphs 1 through 112 and paragraphs 305-327 as if set forth in full and further allege:

328.   At all times material Officers Garcia, Bolduc, Villamil, Rivera, Er. Vidal, Cano, Salabarria, Mitchell, Bicelis, Hicks, El. Vidal and Lt. Garcia were employees of the City of Miami Beach.

329.   At all times material Officers Garcia, Bolduc, Villamil, Rivera, Er. Vidal, Cano, Salabarria, Mitchell, Bicelis, Hicks, El. Vidal and Lt. Garcia were acting within the course and scope of their employment.

330.   The Officers actions were in the furtherance of the interest of their employer.

331.   The employer had placed a sign prohibiting the possession of firearms on the South Pointe Pier.

332.   Officers Rivera, Garcia, and Villamil acted in reliance upon the sign in committing an assault on the Citizens who were fishing on the pier.

333.   Officers Rivera, Garcia, and Villamil acted in reliance upon the sign in handcuffing Taylor, Jenkins, Guiterrez, and Philpot who were fishing on the pier.

48

334.   Officers Rivera, Garcia, Hicks, Mitchell, and Villamil acted in reliance upon the sign in committing battery on the Citizens who were fishing on the pier.

335.   Defendant Officers acted in reliance upon the sign in committing false imprisonment on the Citizens who were fishing on the pier.

336.   Defendant Officers acted in reliance upon the sign in refusing to return firearms in an operable condition to the Citizens who were fishing on the pier.

337.   The statements by Gelber and Oates ratifying the conduct of the Defendant Officers demonstrate that the officers were acting in the course and scope of their employment and with the full knowledge of the employer and were advancing the employer's interest when undertaking the complained of conduct.

338.   Plaintiffs were damaged by the actions of the employee Officers who were acting in the course and scope of their employment.

WHEREFORE, Plaintiffs request the City of Miami Beach be held liable for the actions of the Officers, and for damages for the False Imprisonment, Assault, and Battery, against Plaintiffs.

Plaintiffs demand trial by jury on all issues so triable.

Dated this 27th day of March 2019

49

Kingry & Friday
 /s/ Eric J. Friday
Eric J. Friday, Esquire
Florida Bar No . 0797901
1919 Atlantic Blvd.
Jacksonville, Florida 32207
Telephone: (904) 722-3333
Service@ericfriday com
efriday@ericfriday com


Law Offices of Noel H. Flasterstein
Noel H. Flasterstein
Florida Bar No.. 189553
1700 S  Dixie Hwy, # 501
Boca Raton, FL 33432
813-919-7400