**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 19-cv-22303-KMW

FLORIDA CARRY, INC., a
Florida not for profit corporation, *et al.,*

     Plaintiffs,

vs.

CITY OF MIAMI BEACH, *et al.,*

     Defendants.

_____/

## DEFENDANT OFFICERS' MOTION FOR SUMMARY JUDGMENT

Defendant Officers, MICHAEL GARCIA ("Officer M. Garcia"), KENNETH BOLDUC ("Sergeant Bolduc"), GUSTAVO VILLAMIL ("Officer Villamil"), BRIAN RIVERA ("Officer Rivera"), EDUARDO GARCIA ("Lt. E. Garcia"), JESSICA SALABARRIA ("Sergeant Salabarria"), NAHAMI BICELIS ("Officer Bicelis"), ROBERT MITCHELL ("Officer Mitchell"), LAVANIEL HICKS ("Officer Hicks"), and ELIZABETH VIDAL ("Officer El. Vidal") (collectively, the "Defendant Officers"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby move for summary judgment on all claims asserted against them by the Plaintiffs in this matter. In support thereof, Defendant Officers state as follows: [1]

## INTRODUCTION

On Sunday, June 24, 2018, Plaintiffs, a group of openly armed and unidentified men, converged on the South Pointe Park Pier, which is surrounded by security-sensitive locations such as the crowded South Pointe public beach which hosts thousands of men women and children each day on one side, and the high-security Government Cut inlet, which is the sole route of ingress and

---

[1] Concurrent with this filing, Defendant Officers and co-Defendant, City of Miami Beach, have filed a Statement of Undisputed Facts in Support of their Motions for Summary Judgment ("Statement of Facts"). References to the Statement of Facts and corresponding paragraph(s) shall be identified herein by "ST ¶ __." Defendant Officers hereby incorporate by reference the Statement of Facts as if fully set forth herein.

egress for vessels entering and exiting the Port of Miami, including cruise ships with thousands of people and for U.S. Coast Guard ships carrying out their military missions. [ST ¶¶ 12-14].

It is important to note that Florida Carry's policy and practice is to notify municipalities in advance of holding an open carry event so that the local police department will be aware of what is occurring in the *likely* case that police receive calls from concerned citizens regarding a "man-with-a-gun." Similarly, it is vital to note is that in this instance, due to Plaintiff Philpot sending an unopenable email, neither the Defendant City, its Police Department, nor the Defendant Officers had *any* prior warning or notice that Plaintiffs were coming to the South Pointe Park Pier to conduct an "open carry" demonstration on June 24, 2018. [ST ¶¶ 8, 48, FN 25]. Accordingly, when officers received a radio dispatch call that that group of visibly armed men with guns pacing on the South Pointe Park Pier, they responded on high alert, with the utmost caution, and without any reason to believe that the Plaintiffs qualified for any affirmative defenses that would permit the men to openly carry firearms despite the fact that openly carrying a firearm in public is generally a criminal offense under Florida law. [ST ¶¶ 19-21].

The twelve Defendant Officers in this case were involved in the incident in widely varying degrees.[2] Officer Villamil, Officer M. Garcia, Officer Rivera, and Sergeant Bolduc were the first to arrive at the Pier and encounter the visibly armed Plaintiffs, and therefore Officers Garcia, Rivera, and Villamil were the only officers to point their weapons at Plaintiffs or to place handcuffs on any of the Plaintiffs. [ST ¶¶ 26-32]. Officer Hicks arrived shortly after the first four officers, and the remaining Defendant Officers who responded to the scene arrived in staggered fashion thereafter, with some even anticipating the potential of an active shooter situation based upon the dispatch call. *See, e.g.*, [ST ¶ 36, 40]. Some who arrived stayed on the scene to provide security and support for the officers conducting the investigation, while others quickly left upon establishing that the scene and the situation were under control. [ST ¶ 40].

Ultimately, the six Plaintiffs were disarmed and detained by officers, and some handcuffed, while officers conducted an investigation involving several categories of records checks for each of the Plaintiffs, including persons checks for criminal records or placement on watch lists, firearms legality, concealed weapons permits, and fishing licenses. [ST ¶ 51]. Upon completing their investigation, which lasted just shy of one hour and twenty minutes, officers determined that

---

[2] Plaintiff never achieved service on Defendants Cano and Er. Vidal in this action, and thus this Motion does not address said Defendants.

no Plaintiff would be arrested, concluded the detention and returned all of Plaintiffs' property to the Plaintiffs, including their firearms. [ST ¶¶ 54-55, 59]. Throughout the encounter, all involved Miami Beach Police Officers were polite and respectful to the Plaintiffs and acted reasonably and in good faith. [ST ¶ 53]. There is no evidence in the record to indicate otherwise. Nevertheless, Plaintiffs filed this action in connection with the encounter, asserting various claims against the Defendant Officers pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Florida law.

Based upon the undisputed facts in this case, Defendant Officers are entitled to qualified immunity as to Plaintiff's federal claims because they did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. As to Plaintiff's state law tort claims, Defendant Officers are entitled to individual immunity pursuant to Fla. Stat. § 768.28(9)(a), as there is absolutely no evidence in this case that any of the Defendant Officers acted in bad faith, with malicious purpose, and in wanton and willful disregard of human rights, safety, or property. Defendant Officers respectfully assert that they are entitled to summary judgment even in the absence of such immunity because the record evidence and undisputed facts in this case demonstrate that there are no genuine issues of material fact which require a trial.

Accordingly, and for the reasons more fully set forth herein, each of the Defendant Officers respectfully requests that this Honorable Court enter summary judgment in their favor as to all claims asserted against them by Plaintiffs in this matter.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(a), a party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Although the moving party has the burden of establishing that there is no genuine issue of material fact, so long as the non-moving party has had ample opportunity to conduct discovery, the non-moving party must come forward with affirmative evidence to support his or her claim. *See Celotex v. Catrett*, 477 U.S. 317, 326 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving

party must "go beyond the pleadings, and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324-25. By identifying an absence of record evidence on an issue, the burden shifts to plaintiffs to designate specific facts showing that a genuine issue of material fact exists to preclude summary judgment. *Id*. Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). The court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, however, the court is not required to accept all of the non-movant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458.

## **MEMORANDUM OF LAW**

I.   **DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY AND SUMMARY JUDGMENT ON PLAINTIFFS' FEDERAL CLAIMS ASSERTED AGAINST THEM IN COUNTS IV, V, VI, VII, AND IX**

As an initial matter, the Defendant Officers assert that they are entitled to qualified immunity as to Plaintiff's federal claims asserted against Defendant Officers in their individual capacities. An official sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate a plaintiff's constitutional rights. *Id*. In other words, "[q]ualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53, 208 L. Ed. 2d 164 (2020) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)). Because qualified immunity is an affirmative defense, public actors "must prove that they were acting within the scope of their discretionary authority when the allegedly wrongful act occurred." *Id*. When acting within the

4

scope of their discretionary authority, a public actor is entitled to qualified immunity where the allegedly wrongful act "did not violate clearly established law." *Pearson v. Callahan*, 555 U.S. 223, 243, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Once a defendant establishes that he or she was acting within the scope of his or her discretionary authority, the burden shifts to the plaintiff, who must point to facts that, accepted as true, demonstrate that defendants violated a constitutional right that was "clearly established" at the time of the alleged violation. *Id.* "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer*, 906 F.3d at 951 (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)).

Here, Defendant Officers were responding to a police dispatch call regarding a group of visibly armed men on a crowded, public pier, and thereafter investigating whether Plaintiffs qualified for any affirmative defense that would permit them possess openly carried firearms in public, which is generally a crime under Florida law. *See* Fla. Stat. § 790.053. Accordingly, the Defendant Officers submit that they were acting within their discretionary authority at all times material hereto.

## A. Defendant Officers Had Reasonable Suspicion to Conduct An Investigatory Detention of Plaintiffs.

A police officer may conduct a brief investigatory detention of an individual "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1881 (1968)). The question is whether "the facts available to the officer at the moment of the seizure or search "warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *United States v. Blackman*, 66 F.3d 1572, 1576-77 (11th Cir. 1995) (quoting *Terry*, 392 U.S. at 22). An officer may detain a person for investigation, even if unrelated to the stop's initial purpose where, under the totality of the circumstances, the officer has objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). The reasonable suspicion standard applies to "any curtailment of a person's liberty by the police." *Jackson v. Sauls*, 206 F.3d 1156, 1166 n.12 (11th Cir. 2000).

The reasonable suspicion of criminal activity "may be formed by observing exclusively legal activity, even if such activity is seemingly innocuous to the ordinary citizen." *Lester*, 477 F. App'x at 698 (quoting *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007)). However, "[t]he 'reasonable suspicion' must be more than 'an inchoate and unparticularized suspicion or hunch.'" *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (quoting *Terry*, 392 U.S. at 27). Courts must examine "the totality of the circumstances" to determine whether the police had "a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273.

In the qualified immunity context, an officer is entitled to qualified immunity if he has arguable reasonable suspicion for the seizure. "When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." *Jackson*, 206 F.3d at 1166 (citations and internal quotation marks omitted). Thus, an officer "who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity." *Id.* at 1165-66. Whether arguable reasonable suspicion existed depends on whether "the totality of the circumstances create[d], at least, some minimal level of objective justification for the belief that [plaintiff] engaged in unlawful conduct." *Blackman*, 66 F.3d at 1576.

Further, an officer can handcuff a person when the officer reasonably believes that the person presents a potential threat to safety. *Gray*, 458 F.3d at 1305-06. *See also United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000), 204 F.3d at 1351; *United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989)); *Blackman*, 66 F.3d at 1576-77; *United States v. Lester*, 477 F. App'x 697, 700 (11th Cir. 2012). An officer's action in handcuffing an individual, however, does not automatically convert a Terry detention into an arrest. *Acosta*, 363 F.3d at 1147-48.

Here, there existed ample such arguable suspicion to justify the decision to detain Plaintiffs and to handcuff the armed Plaintiffs while an investigation was conducted. Florida Carry's failure to provide any advance notice to the municipality in contravention to its normal practice, combined with the number of armed men on the Pier, the fact that all were carrying one or more weapons, including at least four who were brazenly carrying visible firearms and at least two who had multiple weapons, wholly justifies officers' decision to handcuff at minimum those Plaintiffs who were visibly armed, while an investigation was conducted. In addition, it is fair to conclude that the Officers' concerns were largely validated when Plaintiffs' group leader, Michael Taylor, stated

to Officer Villamil that his firearm was "locked and loaded" and jeered the officers that the Plaintiffs' firearms were "bigger and powerful than yours." [ST ¶¶ 30, 52].

**B. Defendant Officers Had Probable Cause to Detain and Even Arrest Plaintiffs for the Crime of Openly Carrying a Firearm.**

As set forth more fully by Defendant City in its Motion for Summary Judgment, Florida is not an open carry state. Openly carrying a firearm in Florida is generally prohibited by law. *See* Fla. Stat. §790.053(1) ("Except as otherwise provided by law …, it is unlawful for any person to openly carry on or about his or her person any firearm."). A separate statute, Fla. Stat. §790.25(3), provides a list of several affirmative defenses to the crime of openly carrying a firearm. *Norman v. State*, 215 So. 3d 18, 25 (Fla. 2017) (the exceptions found in §790.25(3) to §790.053(1)'s general prohibition on openly carrying a firearm are affirmative defenses to the crime, to be plead and proven at trial by a criminal defendant charged with openly carrying a firearm).

The previously cited statutes and caselaw establish beyond dispute that the moment that the park ranger, who acts as a civilian security guard in City parks and is a reliable witness, reported men openly carrying firearms on the Pier, probable cause existed for the Officer Defendants to arrest the Plaintiffs for the crime of openly carrying a firearm. *Norman,* 215 So. 3d at 25; *Gomez v. Lozano*, 839 F. Supp. 2d 1309, at 1315-17 (S.D. Fla. 2012). Certainly, upon personal observation of Plaintiffs openly carrying firearms by the approaching Defendants Officers, probable cause to arrest the armed Plaintiffs was established beyond question. *GeorgiaCarry.Org, Inc.*, 2009 U.S. Dist. LEXIS 117989, at *15.

The fact that Plaintiffs may falsely allege that they were actually fishing when approached by Officers does not change this analysis at all. Probable cause to arrest exists in Florida as soon as a criminal subject is observed openly carrying a firearm. *Norman,* 215 So. 3d at 25. The defense that Plaintiffs were putatively fishing is an affirmative defense that Plaintiffs would have been obliged to plead and prove at trial if they had been arrested. *Id*. That affirmative defense would have required each Plaintiff to prove that he was indeed fishing or traveling to (or from) a fishing expedition, and that he that he was not a person who had been adjudged mentally incompetent, that he was not addicted to narcotics or similar drugs, that he was not a habitual or chronic alcoholic, and that he was not a vagrant or other undesirable person. Fla Stat. §790.25(2-3).

And while Plaintiffs may incorrectly argue that the presence of unattended fishing poles nearby should have made it obvious that each of the Plaintiffs was indeed fishing, it is entirely

undisputed that Defendant Officers had no information whatsoever to inform them whether each Defendant was a person who had not been adjudged mentally incompetent, that he was not addicted to narcotics or similar drugs, that he was not a habitual or chronic alcoholic, and that he was not a vagrant or other undesirable person. *Id.*

Plaintiffs may incorrectly argue that the Officers were required to have some evidence to suggest that one or more of these disqualifiers existed <u>before</u> stopping, disarming, and investigating the Plaintiffs, but that argument ignores the plain text of the statute. Fla. Stat. §790.25(2) does not list the potential disqualifiers as elements of the crime of openly carrying a firearm, it lists them as elements required in order to establish the affirmative defense of fishing, which burden Plaintiffs at all time were required to meet with proof. *Norman*, 215 So. 3d at 25 (Fla. Stat. Stat. §790.25(2-3) (exceptions to §790.053(1)'s general prohibition on openly carrying a firearm are affirmative defenses to the crime, to be plead and proven at trial by a criminal defendant charged with openly carrying a firearm).

The existence of a possible affirmative defense is, therefore, also entirely irrelevant to the analysis as to whether the Defendant Officers possessed the lesser justification to stop, disarm, and briefly detain the Plaintiffs upon report or observation that they were openly carrying firearms. Indeed, Officers could have lawfully arrested Plaintiffs, made them stand trial for the crime of openly carrying firearms, and allowed Plaintiffs to attempt to prove at trial that they could meet their burden of proof to establish that they met the elements of the fishing affirmative defense. *Norman*, 215 So. 3d at 25; *GeorgiaCarry.Org, Inc.*, 2009 U.S. Dist. LEXIS 117989, at *15. Defendant Officers' decision to use their discretion to only briefly detain the disarmed Plaintiffs, while Officers assessed the potentially deadly situation that they faced, is therefore entirely unassailable as a matter of law.

Accordingly, because the Defendant Officers' detention of the Plaintiffs was lawful, and because all of Plaintiffs' claims are premised on the alleged illegality of the initial detention, nothing about the Defendant Officers' actions with respect to Plaintiffs violated clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, even if, *arguendo*, one deems the detention to have been a "close call" in its legality, it would still fall squarely in the realm of qualified immunity as the law is not clearly established and the is no evidence whatsoever that the Defendant Officers knowingly violated Plaintiffs' constitutional rights or acted in any manner other than that of reasonable officers, thus entitling the Defendant

Officers to qualified immunity on Plaintiffs' federal claims.

### C. Defendant Officers Garcia, Bolduc, Villamil, Rivera, Hicks, and Mitchell Are Entitled To Qualified Immunity and Summary Judgment As To The 42 U.S.C. § 1983 Claim Asserted By Plaintiffs Devine, Weiss, Gutierrez, And Philpot In Count IV.

In Count IV of Plaintiffs' Complaint, Plaintiffs Devine, Weiss, Gutierrez, and Philpot allege that Officers Garcia, Villamil and Rivera violated their rights pursuant to 42 U.S.C. § 1983, in relevant part, by committing an assault that included pointing loaded firearms at them. Said Plaintiffs further allege that Sergeant Bolduc instructed and directed the assault and provided cover for same. Plaintiffs Weiss, Gutierrez, and Philpot allege that Officer Garcia violated their rights by committing a battery against them while handcuffing them, and by disarming them and thus depriving them of their property and right to bear arms under the Second Amendment. Finally, Plaintiffs Weiss and Philpot allege that Officer Garcia violated their rights by searching them, while Plaintiff Devine alleges that Officer Mitchell Violated his rights by searching him, and Plaintiff Gutierrez alleges that Officer Hicks violated his rights by searching him. [D.E. 1-2, ¶¶ 181-206].

For the reasons set forth above, most namely the valid legal bases for the Plaintiffs' detention all that flowed from same, Defendant Officers Garcia, Bolduc, Villamil, Rivera, Hicks, and Mitchell assert that they are entitled to qualified immunity as to Plaintiff's claims in Count IV. Nevertheless, Defendant Officers believe it is necessary to clarify some additional points of fact in Plaintiffs' allegations.

First, although Plaintiffs' allege that Officer Garcia committed a battery on Plaintiff Weiss while handcuffing him, the evidence and undisputed facts establish that Officer Garcia handcuffed *only* Plaintiffs Gutierrez and Philpot. [ST ¶ 31]. In fact, Plaintiff Weiss was never handcuffed at any point during the subject incident. [ST ¶ 45]. Moreover, As can be clearly seen in the video captured by Officer Garcia's Body Worn Camera, Officer Garcia used no undue force whatsoever when handcuffing Plaintiffs Gutierrez and Philpot and did not commit any battery against either of them. [Ex. Q].

Additionally, Officer Mitchell did not search Plaintiff Devine, this Devine's claim that Officer Mitchell battered him in searching him is meritless. To be sure, Devine has never made any mention of Officer Mitchell in this case despite providing sworn deposition testimony and written discovery responses in which he detailed the subject incident and was asked to state all facts giving

rise to his claims. In fact, Plaintiff Devine was thoroughly deposed regarding every fact on the date of the subject incident, and further responded to written interrogatories in this case which asked him to "Describe in detail all events which you allege took place on or about June 24, 2018, that form the basis for your allegations in your Complaint." [Ex. L, at 7-8]. Although Devine provides a thorough recount of what he alleges took place during Plaintiffs' encounter with Miami Beach police officers on the date in question, and specifically names various officers and what he asserts they did, at no point in either his deposition or his verified responses to discovery has Plaintiff Devine ever made any mention of Officer Mitchell or even any reference to the Complaint allegations against Officer Mitchell that would suggest there is any genuine issue of fact as to such claims. *Id*. at 7-11.

Plaintiff Gutierrez's allegation that Officer Hicks violated his rights by searching him is similarly meritless. As can be observed on video captured by Officer Hicks' Body Worn Camera, Plaintiff Gutierrez specifically asked Officer Hicks to remove a loaded Smith & Wesson .38 caliber firearm that was concealed in his pants pocket because he was handcuffed, and officers had overlooked it. [ST ¶ 37]. Officer Hicks agreed to do so, and gently removed the weapon with Gutierrez's invitation and consent. While Officer Hicks did return and ask Plaintiff Gutierrez if he could pat him down to make sure he did not have any additional weapons on his person, the video reflects that the brief frisk was neither harmful nor offensive and was certainly justified by law. *Id*.

Finally, as to Plaintiffs' claims that the Defendant Officers had no reasonable articulable suspicion on which to detain them, an exchange between officers and Plaintiffs Philpot and Jenkins that was captured on Officer Garcia's Body Worn Camera near the end of the detention indicates that Plaintiffs did have a better understanding of the bases for their detention on the date of the incident:

| | |
|---|---|
| Jenkins: | "But the benefit to all this going on today, not only did the public get an education but you guys got an education…that's the whole point of us doing this, is to educate the public, you guys, everything. Somebody has to do it…" |
| Philpot: | "And also the call they got was that there was a bunch of guys pacing the park with firearms…so we didn't know that." |
| Officer: | "You guys are trying to make a statement…I totally understand that. We gotta take our safety into account first…You have a lot of crazy people out there, shooting cops, shooting people. When we have something like that |

10

come up, we have to take every precaution. Once we verify everybody's good, that's a different story…"

Officer:   "I have no idea who you are or what you're trying to do…You guys say we're good, we're law-abiding citizens, I believe it. But until we prove it otherwise, we're going to take every precaution necessary."

[Ex. CC, 47:20-49:25].

Accordingly, for these reasons as well as those set forth elsewhere herein, Defendant Officers Garcia, Bolduc, Villamil, Rivera, Hicks, and Mitchell respectfully seek summary judgment in their favor as to Count V of Plaintiffs' Amended Complaint.

**D. Defendant Officer Villamil Is Entitled To Summary Judgment As To The § 1983 Claim Asserted By Plaintiff Taylor In Count V.**

Count V of Plaintiffs' Amended Complaint asserts a claim by Plaintiff Taylor against Officer Villamil, pursuant to 42 U.S.C. § 1983. Specifically, Taylor alleges that Villamil detained, handcuffed, and seized property from Taylor including Taylor's firearm, without any legal basis or justification. Taylor further alleges that Villamil used excessive force in detaining Taylor, causing Taylor to suffer physical injury.

An officer is entitled to qualified immunity from an excessive force claim unless every reasonable officer in his position would have concluded that his use of force was unlawful. *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997). Further, to be entitled to qualified immunity, "an officer need only have arguable probable cause" to employ force. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). Courts "do not sit in judgment to determine whether an officer made the best or a good or even a bad decision in the manner of carrying out an arrest. The Court's task is only to determine whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense . . . In the constitutional context, reasonableness-on a given set of facts-is 'a pure question of law.'" *Buckley v. Haddock*, 292 F. App'x. 791, 794 (11th Cir. 2008).

In determining if the use of force was reasonable, a court must examine (1) the need for the application of force, (2) the relationship between the need and amount of force use, and (3) the extent of the injury inflicted. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)). The nature and degree of force needed is measured by such factors as "the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

An officer can handcuff a person when the officer reasonably believes that the person presents a potential threat to safety. *Gray*, 458 F.3d at 1305-06. Based on all the record evidence, including Plaintiff Taylor's own comments detailed above, and own video which shows the entirety of Taylor's handcuffing by Officer Villamil, it is clear that Officer Villamil did not use any undue force whatsoever, let alone excessive force, in detaining or handcuffing Plaintiff Taylor. *See*, [Ex. C]. To the contrary, Officer Villamil and all other officers who interacted with Taylor acted with the utmost professionalism towards Taylor and all other Plaintiffs throughout the incident, especially in light of the circumstances.

Viewing the undisputed facts, Officer Villamil asserts it can reasonably be asserted that no reasonable officer in his position would conclude that the force – or lack thereof – used in detaining Plaintiff Taylor was excessive or otherwise unlawful. Accordingly, Officer Villamil asserts that he is entitled to qualified immunity and respectfully requests that this Court grant summary judgment in his favor as to Count V.

### E. DEFENDANT OFFICER RIVERA IS ENTITLED TO SUMMARY JUDGMENT AS TO THE § 1983 CLAIM ASSERTED BY PLAINTIFF JENKINS IN COUNT VI.

Count VI of Plaintiffs' Amended Complaint asserts a claim by Plaintiff Jenkins against Officer Rivera, pursuant to 42 U.S.C. § 1983. Specifically, Jenkins alleges that Rivera detained, handcuffed, and seized property from Jenkins including Jenkins' firearm, without any legal basis or justification. Jenkins further alleges that Rivera used excessive force in detaining Jenkins, causing Jenkins to suffer physical injury.

On the basis of the same legal grounds set forth above with respect to Plaintiff Taylor's claim against Officer Villamil, Officer Rivera is entitled to summary judgment as to Count VI. Based on all of the record evidence, including several videos which depict the entirety of the events on the Pier, it is clear that Officer Rivera did not use excessive or even any undue force in detaining or handcuffing Plaintiff Jenkins. *See*, [Ex. C]; [Ex. Q]; [Ex. X]. To the contrary, Officer Rivera and all other officers who interacted with Jenkins acted with the utmost professionalism towards Jenkins and all other Plaintiffs throughout the incident, especially in light of the circumstances.

Viewing the undisputed facts, Officer Rivera asserts it can reasonably be asserted that no reasonable officer in his position would conclude that the force – or lack thereof – used in detaining

Plaintiff Jenkins was unlawful. Accordingly, Officer Rivera asserts that he is entitled to qualified immunity and respectfully requests that this Court grant summary judgment in his favor as to Count VI.

### F.  DEFENDANT OFFICERS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE 42 U.S.C. § 1983 CLAIM ASSERTED BY PLAINTIFFS IN COUNT VII.

In Count VII of Plaintiff's Amended Complaint, all Plaintiffs assert claims against all of the Defendant Officers pursuant to 42 U.S.C. § 1983, based in relevant part on allegations that all of the Defendant Officers "participated in" the unlawful detentions, searches, and seizures of Plaintiffs' property and persons, that Defendant Officers interfered with Plaintiffs' rights of assembly and association, and further that Defendant Officers failed to take reasonable steps to protect Plaintiff Taylor from further injury by failing to take any steps to relieve Taylor of the pain or further injury to his shoulder that he complained was being caused by the placement of his handcuffs. [D.E. 1-2; 246-259].

As set forth elsewhere in this brief, any alleged detentions, searches, or seizures conducted in connection with the subject incident did not violate law and were based on reasonable suspicion or probable cause, and at minimum did not violate any clearly established rights. In the same vein, while the Defendant Officers dispute that they did not unlawfully prevent Plaintiff's right to freedom of assembly and association, all actions taken by the Defendant Officers were reasonable under the circumstances, and further, Plaintiffs' rights in this context are not clearly established and thus Defendant Officers are entitled to qualified immunity on several grounds.

As to the allegations regarding Plaintiff Taylor, the undisputed facts and record evidence in this case establish that Plaintiff Taylor complained of his shoulder hurting because of the handcuffs and requested medical attention. Officers on the scene promptly requested Fire Rescue to examine Taylor. When Fire Rescue arrived at the Pier, non-party Officer Ferbeyre and Defendant Officer El. Vidal escorted Taylor to the end of the Pier to be evaluated by Fire Rescue, without incident. Officer Ferbeyre also double-handcuffed Taylor so that he could be more comfortable and have more freedom of motion to alleviate any pain to his shoulder. Additionally, after Fire Rescue issued Taylor an ice pack to help alleviate his complained of pain, Officer Ferbreye escorted Taylor to his patrol vehicle so that Taylor, who was sweating in the June heat, could sit in the air conditioning while units on the scene completed their investigation. Once the investigation was completed, Officer Ferbreye escorted Taylor back to the Pier and unhandcuffed him without incident. [ST ¶

42]; [Ex. S]. Thus, any claims that the police officers on scene did not take reasonable steps to relieve Plaintiff Taylor are disingenuous at best.

Accordingly, for these reasons as well as those set forth elsewhere herein, Defendant Officers respectfully seek summary judgment in their favor as to Count VII of Plaintiffs' Amended Complaint.

## II.    SUMMARY JUDGMENT MUST BE GRANTED ON PLAINTIFFS' 42 U.S.C. § 1985 CLAIM AGAINST THE DEFENDANT OFFICERS FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS AS ASSERTED IN COUNT IX

In Count IX of Plaintiffs' Amended Complaint, all Plaintiffs assert a claim against all the Defendant Officers for Conspiracy to Interfere with Civil Rights pursuant to 42 U.S.C. § 1985. In relevant part, Plaintiffs allege in Count IX that the Defendant Officers conspired to deprive Plaintiffs of their rights and their equal privileges and immunities under the laws, conspired to violate Plaintiffs' First Amendment right to assemble, conspired to violate Plaintiffs' First Amendment right to associate, and conspired to violate Plaintiffs' Second Amendment right to bear arms by closing the South Pointe Pier with the intent of preventing Plaintiffs from expressing and exercising their rights and opinions, for no reason other than their disagreement with the reason the Plaintiffs were assembled. Plaintiffs further allege that the Defendant Officers' desire to restrict Plaintiffs' assembly was content based. [D.E. 1-2, ¶¶ 287-303].

Section 1985 covers conspiracies to interfere with civil rights. *See* 42 U.S.C. § 1985. "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law." *Trawinski v. United Technologies*, 313 F.3d 1295, 1299 (11th Cir. 2002). Section 1985(2) provides a cause of action for obstruction of justice where "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . . ." 42 U.S.C. § 1985(2).

Section 1985(3) provides a remedy for a conspiracy to interfere with civil rights. *See* 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States. *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996).

To prove the second element, the plaintiff must show that the deprivation of rights or privileges occurred as a result of "some racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id*. at 1147 (quotations omitted).

Assuming, *arguendo*, that Plaintiffs can show there is a genuine issue of material fact as to the existence of (1) a conspiracy, (3) overt acts in furtherance, and (4) injury, which Defendant Officers expressly deny, Plaintiffs nevertheless have not, and cannot, satisfy the second element: "(2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws . . . ." *Jimenez v. Wellstar Health Sys*., 596 F.3d 1304, 1312 (11th Cir. 2010). The second element requires that Plaintiffs allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am.*, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 834-835, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)). "Thus, a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (citing *Aulson v. Blanchard*, 83 F.3d 1, 4-5 (1st Cir. 1996)).

Accordingly, even if there were some genuine issue of material fact as to whether a conspiracy existed, which there is not, Defendants are entitled to summary judgment on Plaintiff's § 1985 claim because the alleged actions were not taken against an identifiable class. *Cf. United Bhd.*, 463 U.S. at 833 ("[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause . . . ."). The Supreme Court and circuit courts have been reluctant to expand the definition of class beyond those that are race-based. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993). As the Supreme Court stated:

> [The term class] unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid. *Id*.

As thoroughly explained in a recently issued opinion by another Florida District Court in *Turner v. Williams*, 2020 U.S. Dist. LEXIS 67807, *30-31 (M.D. Fla. 2020), Courts are split on whether political affiliation or similar cause-based affiliation is an acceptable class. In dismissing the plaintiff's § 1985 conspiracy claim, the *Turner* Court found *no case upholding a class of persons merely supporting particular candidates or causes. Cf., e.g., Farber*, 440 F.3d at 136-38 (holding that city employees who were fired for supporting former administration in election did not comprise identifiable class under § 1985(3)); *Aulson v. Blanchard,* 83 F.3d 1, 4-5 (1st Cir. 1996) (affirming dismissal of complaint where class alleged was "composed solely of persons who support candidates opposed to the politics of the 'old guard,' and that the defendants are members of the 'old guard."); *Dean v. Olens*, No. 1:18-CV-4224-TCB, 2019 U.S. Dist. LEXIS 227881, 2019 WL 8017734, at *6 (N.D. Ga. Feb. 7, 2019) (finding the law in the Eleventh Circuit to be unsettled and dismissing plaintiff's complaint because "membership in a political class, i.e., that class of people 'protesting police brutality against African Americans.'" is indeterminate and invalid for § 1985(3) purposes); *Farber v. City of Paterson*, 440 F.3d 131, 139 (3d Cir. 2006) (identifying circuit split and explaining the Supreme Court's "skepticism" in *United Brotherhood* that 1985(3) was intended to reach anything other than race-based classes).

Nonetheless, the Court need not go into a lengthy analysis about whether Plaintiffs, here a group of Caucasian firearm-enthusiast males, are part of a class deserving protection under § 1985(3) because even if they are—which is highly doubtful—the law is not clearly established. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868, 198 L. Ed. 2d 290 (2017) (granting qualified immunity in § 1985(3) claim, and recognizing "when the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability."); *see also Turner*, 2020 U.S. Dist. LEXIS 67807, *30-31. Accordingly, Defendant Officers are entitled to qualified immunity and summary judgment in their favor as to Count IX of Plaintiff's Amended Complaint.

## III.    DEFENDANT OFFICERS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS FOR FALSE IMPRISONMENT, ASSAULT, AND BATTERY AS ASSERTED IN COUNTS X, XI, AND XII ON THE BASIS OF INDIVIDUAL IMMUNITY

Counts X, XI, and XII of Plaintiffs' Amended Complaint assert claims by the individual Plaintiffs against various Defendant Officers arising under state law. Specifically, Count X alleges a claim for false imprisonment by all the individual Plaintiffs against all the Defendant Officers,

Count XI alleges a claim for assault by all the individual Plaintiffs against Defendant Officers M. Garcia, Villamil, and Rivera, and Count XII alleges a claim for Battery by all the individual Plaintiffs against Defendant Officers M. Garcia, Villamil, Rivera, Hicks, Mitchell, and Sergeant Bolduc.

In accordance with Florida's waiver of sovereign immunity statute, an officer can only be liable in his or her individual capacity if he or she "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. In determining whether 768.28(9)(a) immunity applies, the court should ask whether a reasonable trier of fact could possibly conclude that the conduct was willful and wanton, or would otherwise fall within the exceptions to the statute. *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006). If the answer to that inquiry is no, then summary judgment is appropriate.

Upon review of the undisputed facts and record evidence in this case, nor reasonable trier of fact could conclude that any of the Defendant Officers acted maliciously or with wanton and willful disregard with respect to any aspect of their encounter with Plaintiffs on June 24, 2018. In fact, review of all videos captured by both Plaintiff Taylor and the Defendant Officers' Body Worn Cameras reveals that all the Defendant Officers who had any interaction with the Plaintiffs were commendably patient, courteous, and professional towards all of the individual Plaintiffs throughout the entire incident. *See*, *e.g.*, [ST ¶¶ 47-49, 53]; [Ex. C]; [Ex. Q]; [Ex. X]; [Ex. Z].

Even if, *arguendo*, this Court believed that the underlying legality of the Plaintiff's detention was questionable, which Defendant Officers respectfully contend it was not, there is no denying that it was employed in good faith and devoid of malicious intent. Indeed, it is relevant to note that Plaintiffs have returned to Miami Beach on multiple occasions to conduct "open carry" demonstrations following the subject incident without any issues from the police department or any of the officers, who have in fact worked with their organizers to ensure a smooth event. [ST ¶ 61]. Because there is simply no record evidence supporting any finding that any of the Defendant Officers acted in bad faith, with malicious purpose, or in willful disregard of Plaintiff's rights, in accordance with § 768.28(9)(a), Defendant Officers respectfully request that this Court grant summary judgment in their favor as to Counts X, XI, and XII of Plaintiffs' Amended Complaint.

## IV.   SUMMARY JUDGMENT MUST BE GRANTED AS TO DEFENDANT OFFICERS SALABARRIA, VIDAL, BICELIS, AND MITCHELL ON THE BASIS OF THE

**PLAINTIFFS' COMPLAINT AND LACK OF RECORD EVIDENCE TO SUPPORT ANY OF PLAINTIFF'S CLAIMS**

### A. Sgt. Salabarria, Ofc. El. Vidal, and Ofc. Bicelis.

Plaintiffs' Amended Complaint asserts three Counts against Defendants, Sergeant Jessica Salabarria,[3] Officer El. Vidal, and Officer Nahami Bicelis for (1) Violation of civil rights pursuant to 42 U.S.C. § 1983 as to all Plaintiffs (Count VII), (2) Conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 as to all Plaintiffs (Count IX), and (3) False imprisonment under state law as to Plaintiffs Taylor, Jenkins, Devine, Weiss, Gutierrez, and Philpot (Count X). In addition to the legal deficiencies that warrant summary judgment on such claims as more fully expounded upon *supra*, there is simply no record evidence upon which Plaintiffs can rely to create any genuine issue for trial with respect to their claims against any of the three referenced officers.

As an initial matter, Plaintiff's Amended Complaint is entirely devoid of any ultimate facts that would give rise to any claim whatsoever against Salabarria, El. Vidal, or Bicelis. To be sure, only three paragraphs of Plaintiff's Amended Complaint make any mention of each. [D.E. 1-2, ¶¶ 12, 327, 328]. In those three paragraphs the sum total of what is alleged by Plaintiffs is that Salabarria, El. Vidal, and Bicelis were at all times material police officers employed by the City of Miami Beach, and that they were at all times material acting within the course and scope of their employment. None of these officers dispute such allegations; however, all contend that these allegations do not give rise to any plausible claim or genuine issue of material fact against them.

More importantly, the record in this case is utterly devoid of any evidence which would create a genuine issue of material fact for trial as to Sergeant Salabarria. As clearly set forth in the Offense Incident Report that Sergeant Salabarria prepared in connection with the subject incident, on the date of the subject incident, she overheard a dispatch call referencing several armed men on the Pier at South Pointe Park. Unaware if it was a potential active shooter situation, she responded from her zone to assist the area with a sergeant in the event of an emergency. Upon her arrival on the Pier, Sergeant Salabarria observed that all Plaintiffs were already detained, and observed that an investigation was already being conducted. [ST ¶ 40]. Sergeant Salabarria briefly stood by to ensure that everything was under control and then left to get back to her patrol district. She took no law enforcement actions at the scene and had no interaction with the Plaintiffs. *Id.*

---

[3] Plaintiffs refer to Salabarria as "Officer Salabarria." However, Salabarria is in fact a Sergeant with the City of Miami Beach Police Department.

As to Officer El. Vidal, as clearly set forth in the Offense Incident Report that Officer Vidal prepared in connection with the subject incident, on the date of the subject incident, she responded to the South Pointe Park Pier in emergency mode in reference to a report of multiple men on the Pier with visible firearms. Upon her arrival on the Pier, Officer Vidal observed that all Plaintiffs had already been detained. [ST ¶ 42]. Officer Vidal's total involvement was limited to assisting other officers in securing the scene and helping to walk Plaintiff Taylor to meet Fire Rescue that he requested at the entrance of the Pier, which was brief and without incident. *Id*.

Similarly, as clearly set forth in the Sworn Declaration that Officer Bicelis prepared in connection with the subject incident, all six individual Plaintiffs had already been detained by officers upon her arrival at the Pier. [ST ¶ 41]. Officer Bicelis' total involvement was limited to remaining in the area to provide backup to the primary officers as they conducted their investigation, assisting in verifying information for the Offense Incident Reports, completing a property receipt for Plaintiff Devine and ensuring that Devine's property was returned to him when the investigation was concluded, and Plaintiffs were permitted to leave. *Id*.

These officers had only ancillary involvement, if any, as to the subject incident. The Eleventh Circuit has held that assisting officers are entitled to qualified immunity when there is no indication that they acted unreasonably in following the lead of a primary officer or that they knew or should have known that their conduct might result in a Fourth Amendment violation, even where the primary officer is not entitled to qualified immunity. *Shepard v. Hallandale Beach Police Dep't*, 398 F. App'x 480, 483 (11th Cir. 2010) (citing *Brent v. Ashley*, 247 F.3d 1294, 1305-06 (11th Cir. 2001)). The record evidence in this case simply does not give rise to a genuine issue of material fact as to any claim asserted against Salabarria, Vidal, or Bicelis, and there exists no evidence in the record that Plaintiffs can point to in order to contravene these facts.

Accordingly, Sergeant Salabarria, Officer El. Vidal, and Officer Nahami Bicelis respectfully assert that they are entitled to summary judgment in this matter and pray for judgment in their favor as to Counts VII, IX, and X of Plaintiff's Amended Complaint.

**B.   Ofc. Mitchell.**

Plaintiffs' Amended Complaint asserts three Counts against Defendant, Officer Robert Mitchell, for (1) Violation of civil rights pursuant to 42 U.S.C. § 1983 as to Plaintiffs Devine, Weiss, Gutierrez, and Philpot (Count IV), (2) Violation of civil rights pursuant to 42 U.S.C. § 1983 as to all Plaintiffs (Count VII), (3) Conspiracy to interfere with civil rights pursuant to 42 U.S.C.

§ 1985 as to all Plaintiffs (Count IX), (4) False imprisonment under state law as to Plaintiffs Taylor, Jenkins, Devine, Weiss, Gutierrez, and Philpot (Count X); and (5) Battery under state law as to Plaintiffs Taylor, Jenkins, Devine, Weiss, Gutierrez, and Philpot (XII). In addition to the legal deficiencies that warrant summary judgment on such claims as more fully expounded upon elsewhere in this brief, Plaintiffs have no facts upon which they can rely to create any genuine issue for trial with respect to their claims against Officer Mitchell.

Unlike the three officers noted above, Plaintiffs' Amended Complaint does indeed allege specific, though sparse, allegations as to Officer Mitchell. Specifically, Plaintiffs assert that Officer Mitchell violated Plaintiff Devine's rights and battered Devine by searching Devine on the Pier. [D.E. 1-2, ¶¶ 194, 314, 318]. However, as discussed *supra*, there is simply no record evidence in this case to support Plaintiffs' allegations in this regard or to give rise to any genuine issue of fact for trial in this cause as to Officer Mitchell. *Id.* at 7-11.

In fact, the only record evidence as to Officer Mitchell in this matter are the videos captured at the scene – none of which show Officer Mitchell searching Plaintiff Devine – as well as Officer Mitchell's Offense Incident Report narrative in which Officer Mitchell specifically notes that he arrived on the Pier after all of the subjects had already been detained by officers, and remained on scene only for security and support purposes while officers conducted their investigation of the Plaintiffs, ultimately assisting in completing a property receipt for Plaintiff Gutierrez and returning Gutierrez's property to him after the investigation had concluded. [ST ¶ 39]. The record evidence in this case simply does not give rise to a genuine issue of material fact as to any claim asserted against Officer Mitchell and there exists no evidence in the record that Plaintiffs can cite to contravene this fact.

Accordingly, Officer Mitchell respectfully submits that there is no genuine issue of fact as to the claims asserted against him in this case and prays for summary judgment in his favor as to Counts IV, VII, IX, X, XII of Plaintiff's Amended Complaint.

## CONCLUSION

WHEREFORE, Defendant Officers, MICHAEL GARCIA, KENNETH BOLDUC, GUSTAVO VILLAMIL, BRIAN RIVERA, EDUARDO GARCIA, JESSICA SALABARRIA, NAHAMI BICELIS, ROBERT MITCHELL, LAVANIEL HICKS, and ELIZABETH VIDAL, respectfully request that this Honorable Court enter an Order granting final Summary Judgment in their favor as to all claims asserted against them by Plaintiffs in this matter, dismissing them from

this matter with prejudice, and entering any such additional relief as this Court deems equitable and just.

Dated this 2<u>nd</u> day of February, 2021.

Respectfully submitted,

<u>s/Robert L. Switkes</u>
Robert L. Switkes, Esq.
Florida Bar No. 241059
rswitkes@switkeslaw.com
<u>s/Bradley F. Zappala</u>
Bradley F. Zappala, Esq.
Florida Bar No. 111829
bzappala@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami Beach, FL 33139
Tel: 305-534-4757
Fax: 305-538-5504
*Counsel for Defendant Officers*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this <u>3rd</u> day of February, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/Bradley F. Zappala</u>
Bradley F. Zappala, Esq.

**SERVICE LIST**
*Florida Carry, Inc., et al v. City of Miami Beach, et al.*
**United States District Court, Southern District of Florida**
**Case No.: 19-cv-22303-KMW**

**Eric Friday, Esq.**
Kingry & Friday
1919 Atlantic Blvd.
Jacksonville, Florida 32207
Phone: 904-722-3333
Fax: 954-900-1208
E-Mail: efriday@ericfriday.com
*Attorney for Plaintiffs*

**Noel H. Flasterstein, Esq.**
Law Offices of Noel H. Flasterstein
1700 S. Dixie Hwy, Suite 501
Boca Raton, Florida 33432
Phone: 813-919-7400
*Attorney for Plaintiffs*

**Mark Fishman, Esq.**
1700 Convention Center Drive
4th Floor, Legal Department
Miami Beach, Florida 33139
Phone: 305-673-7470
*Attorney for Defendants, City of Miami Beach and Jimmy Morales*

**Robert F. Rosenwald, Esq.**
1700 Convention Center Drive
4th Floor, Legal Department
Miami Beach, Florida 33139
Phone: 305-673-7470
Fax: 305-673-7002
E-Mail: RobertRosenwald@miamibeachfl.gov
*Attorney for Defendants, City of Miami Beach and Jimmy Morales*

**Adam Hapner, Esq.**
Weiss Serota Helfman Cole & Bierman, P.L.
200 East Broward Blvd., Suite 1900,
Fort Lauderdale, FL 33301
Phone: 954-763-4242
E-Mail: jcole@wsh-law.com; msarraff@wsh-law.com
*Attorney for Defendant, Dan Oates*