UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-22303-KMW

FLORIDA CARRY, INC., a
Florida not for profit corporation, et. al.
     Plaintiffs,

v.

CITY OF MIAMI BEACH, et. al.
     Defendants
_____/

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITON TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    Defendants Motion for summary judgment mis-states the applicable law and fails to cite binding precedent on the issue of lawful possession of firearms by Floridians.**

The main thrust of Defendants' motion to dismiss is that the law which expressly allowed the open carry of firearms by Plaintiffs under the circumstances of the incident is a mere affirmative defense. As such, Defendants argue, Plaintiffs were subject to detention or even arrest, for possessing firearms openly, regardless of what activity they were engaged in while openly carrying a firearm.

Defendants assert that this Court should rely on the plain language of Sec. 790.25 and the holding of the Florida Supreme Court in *Norman v. State*, to hold that any person anywhere, who openly possess a firearm is subject to arrest and must prove at trial that the provisions of Sec. 790.25 are applicable to the

1

individual and the circumstances.  Defendants take this argument even further and ask this Court to hold that it is further the burden of every citizen in possession of a firearm to provide proof on demand to any law enforcement officer that the individual meets all qualifications and requirements to lawfully possess a firearm, such as not being a user of illegal substances, not being mentally ill, and not being a convicted felon.

Defendants' arguments go well beyond any holding of any Florida Court to have ever passed on the applicability of Sec. 790.25 Florida statute to create millions of individuals in Florida who are at all times subject to detention, arrest, and prosecution with no recourse, if they choose to exercise a fundamental enumerated right guaranteed by eh constitutions of the United States and the State of Florida.

**A.** **Because of the binding precedent of Florida court's repeatedly rejecting reliance on the "plain language" of Sec. 790.25, Fla. Stat. this Court should do likewise when interpreting the provisions of that statute, due to the foreseen absurd results.**

Florida Courts have had multiple occasions to interpret the provisions of Sec. 790.25, Fla. Stat.  In doing so every Court to consider the statute has ruled that the plain language of Sec. 790.25 cannot be relied upon when to do so would lead to an absurd result.  See, *Peoples v. State*, 287 So.2d 63 (Fla. 1973) and French v. State, 279 So.2d 317 (Fla. 4th DCA 1973).  See also, *State v. Commons*, 592 So.2d

317 (Fla. 3d DCA 1991); *Cates v. State*, 408 So.2d 797 (Fla. 2d DCA 1982)(firearm in a vehicle); *State v. Hanigan*, 312 So.2d 785 (Fla. 2nd DCA 1975)(weapon other than a firearm, holding that there was no logical basis to distinguish one paragraph of Sec. 790.25(3) from another paragraph of the same subsections); *Russ v. State*, 304 So.2d 481 (Fla. 1st DCA 1974).

As just two examples, *Peoples* and *French* demonstrate that to read Sec. 790.25 as a mere affirmative defense, would invalidate the purpose of the statute which recognizes as its underpinning, the constitutional right to bear arms. Sec. 790.25 itself goes further and states that its very purpose is to avoid prohibiting the lawful use of firearms as authorized by law for lawful purposes. It goes farther by stating that it should be liberally construed in favor of the right to bear arms without diminishing rights established by statute and case law, and that its provisions are in addition and supplemental to the right as already recognized. Sec. 790.25, Fla. Stat.

Despite this express direction, and statement of intent and purpose by the Florida Legislature, Defendants ask this Court time and again to sanction and condone all of their actions against Plaintiffs on June 24, 2018 as somehow consistent with Sec. 790.25.

3

In *Peoples* and *French,* Florida courts held that even despite the express language of Sec. 790.25, that it does not authorize the carrying of a concealed weapon without a permit, the language could not be read to criminalize the otherwise lawful possession of a firearm in one's home or place of business.  See, also, *State v. Little*, 104 So.3d 1263 (Fla. 4th DCA 2013) and *Curry-Pennamon v. State*, 159 So. 3d 158 (Fla. 1st DCA 2015); (both finding that the provision of Sec. 790.25 allowed the carrying of a firearm under the circumstances of those cases and discharging the defendants in those cases).

Defendants would have this Court turn this long line of decisional law on its head and declare that any person in the state of Florida in possession of a firearm, is not exercising a constitutional right, but instead is a criminal subject to arrest and detention.  Furthermore, Defendants ask this Court to leave it up to each officer's discretion to decide whether to even investigate claimed affirmative defenses under Sec. 790.25, all while allowing the officer to commit the same crime they are investigating or arresting an individual for committing.

**B.      Reliance on the decisions of the courts over the 'plain language' of Sec 790.25 is necessary because reliance on a 'plain language' would subject millions of Floridians to the same abusive treatment suffered by Plaintiffs in this case.**

An adoption of Defendants interpretation of Sec. 790.25's plain language would in fact lead to absurd results.  The first and most prominent absurdity would

4

be the application to this case.  Accepting Defendants interpretation of the statute as accurate, means that the Defendants officers themselves were committing the crime of open carry, at the very moment they stepped from their police vehicles to Meet with Ranger Vinas about the firearms being carried on the pier.

Sec. 790.053, Fla. Stat., when read as Defendants ask this Court to read it, is a blanket prohibition on the open carry of firearms.  According to Defendants' motion, any person with an openly carried firearm on June 24, 2018, was committing a crime and was subject to arrest until their qualification under Sec. 790.25 and other provisions of Chapter 790, as well as federal law, was established.

The inescapable result of this argument is that the officers themselves were committing the same crime by the open carry of their firearms as seen throughout the videos of the incident.  While the officers appeared to be completely unaware, the fact is the very subsection under which Plaintiffs openly possessed their firearms is the only basis under which the officers themselves could legally openly carry their own duty weapons in the state of Florida.  Just as Sec. 790.053 does not contain an exception for persons fishing, it does not make an exception for law enforcement officers from its blanket prohibition on the open carry of firearms.

Both the fisherman and the police officer are only able to carry firearms openly under the provisions of Sec. 790.25(3), Fla Stat.

5

To illustrate the absurdity of Defendants' interpretation of Sec. 790.25 even further, approximately 6-7 million adults in Florida own a firearm[1].  Only a little over 2 million of those individuals have a CWFL.  Under Defendants' interpretation of Sec. 790.25, each of those individuals who possess a hidden firearm in their home without a CWFL, are subject to arrest for the mere possession of the concealed firearm until they prove they are allowed to have a firearm and that it is their home or place of business.  Such an analysis was expressly rejected by the courts in Peoples and French, recognizing the absurdity of such a plain language reading.

### C.     Defendants misstate the holding of the Florida Supreme Court in *Norman v. State*.

Defendants seek to rely on the ruling of the Florida Supreme Court in *Norman* v. State, that the provisions of Sec. 790.25 are mere affirmative defenses to justify their actions during the incident.  While *Norman* did recognize and allow

---

[1] Based on a study by Rand Corporation attempting to estimate household firearm ownership by state.  The study estimated an adult household firearm ownership rate of 28.8% in 2016,    Data may be downloaded from https://www.rand.org/pubs/tools/TL354.html. It is further widely reported from as disparate sources as Politifact (https://www.politifact.com/factchecks/2018/feb/15/joy-reid/Do-one-third-of-people/), Bloomberg funded anti-gun 'news' organization The Trace, (https://www.thetrace.org/2020/04/gun-ownership-state-estimates-rand/), and Injury Prevention International (http://sites.bu.edu/tec/files/2017/09/Gun-ownership-and-social-gun-culture..pdf) that one third of Floridians own firearms.

for the detention of the defendant there, it did not announce the rule that Defendants claim it stands for.

The question in *Norman* was whether the state, during the prosecution of Norman, had to prove that none of the affirmative defenses applied, a question the Court answered in the negative.  Nothing in the *Norman* opinion indicates that Norman made a suppression argument regarding his detention.  Nor does anything in the Norman court's opinion indicate an intent to retreat from decades of case law regarding the legality of Plaintiffs' conduct.

The questions certified by the trial court in *Norman* only asked what the state was required to prove or disprove at trial, not whether the stop and detention was valid in the first instance.  In fact, the Florida Supreme Court declined to address the exemptions of Sec. 790.25 because it was an affirmative defense, and Mr. Norman's overall challenge to his prosecution was based on the argument that he had a constitutional right to open carry.

At no time did the *Norman* court state that the mere presence of a firearm whether carried openly or concealed justified a detention, handcuffing, or arresting of an individual.

**II.**

7

**III.  Sec. 790.25's status as an affirmative defense in a criminal prosecution does not authorize law enforcement to detain every person they see with a firearm.**

  **A.  Florida Courts have repeatedly held that there is no firearm exception to the Fourth Amendment.**

Despite what may have ben ruled in other jurisdictions, in Florida there is no "firearm exception to the reasonable suspicion test. *Regalado v. State*, 25 So.3d 600 (Fla. 4th DCA 2009); and *Slydell v. State*, 240 So.3d 134 (Fla. 2d DCA March 14, 2018).

According to the three officers Plaintiffs were allowed to fully depose, Defendants not only believe that there is a firearm exception to the Fourth Amendment but claim that it is the policy of the City, or at least its police department, to treat the presence of a firearm as a basis for the detention, search, and arrest of any armed individual.

In their motions for summary judgement, Defendants claim that the mere presence of the openly carried firearms allowed any detention or search they wished to perform, including an arrest.  Defendants

  **B.  Totality of the circumstances is critical to the analysis of whether law enforcement has the authority to detain a person for open carry of a firearm.**

As noted by the Florida Supreme Court Mackey, when considering a possible conflict with the totality of the circumstances is critical to determining the level of encounter that an officer may lawfully have with a suspect whom the officer believes is illegally carrying a firearm.

In *Regalado,* the 4th DCA fond that the officer there, did not have a basis to detain Mr. Regalado based on a tip regarding possession of a firearm. The court there found that the general lawfulness and right to possess a firearm under the laws of Florida, prevented the officer from having a legal basis to detain Regalado at gun point without more, and therefore the stop, and discovery of the firearm were a violation of Regalado's Fourth Amendment rights and the evidence of firearms possession should be suppressed. Regalado, 25 So. 3d 600.

The Florida Supreme Court later took the *Mackey* case based on its conflict jurisdiction. Unlike *Regalado*, and the case before this Court, the officer in *Mackey*, started his investigation as a consensual encounter with Mr. Mackey.

If the Defendants here are correct, and the mere presence of a firearm or presumption of illegal possession existed, there would have been no reason for the Supreme Court's analysis and distinguishing of *Mackey* from *Regalado*. Under Defendants legal analysis the Supreme Court could merely have noted that a CWFL was an affirmative defense, not an element of the crime, and therefore

9

officers had authority to detain and search both Messrs. Mackey and Regalado based on the fact they were obviously in possession of firearms.

Instead, the *Mackey* Court distinguished between a gun point detention of Regalado, where there was no evidence, he was illegally carrying a firearm, and the consensual encounter with Mackey that led to a lie, justifying the officer's suspicion regarding the illegality of Mackey's possession of the firearm.

The totality of the "relevant" circumstances in this case, are that officers had no reason or basis to believe Plaintiffs' possession of firearms were illegal, nor do they argue that they had such reason based on the totality of the circumstances. Instead, Defendants argue that the mere possession of an openly carried firearm completes the crime in and of itself without any need for further investigation.

Defendants' argument, however, rejects completely the exercise of a right, and forces every Floridian to subject themself to arrest in order to behave in a manner expressly authorized by Florida law.  Such an analysis of any statute, much less one related to a fundamental right, must be rejected by this Court if the right is to actually be a right.

**IV.    Defendants' motions ignore the continued violations of rights occurring after they determined that no crime had been committed by Plaintiffs.**

10

**A.    After determining no crime had been committed, Defendants continued to violate Plaintiff's constitutional rights.**

After the violations of Plaintiffs rights at the outset of the incident, and having determined that Plaintiffs' conduct was not only legal but specifically sanctioned by the very statute under which the Defendant officers themselves were openly carrying firearms, Defendants doubled down on their violation of Plaintiffs' constitutional rights.

Despite knowing that Plaintiffs were legally fishing, based on license checks, knowing that four of the Plaintiffs had state issued license for the carrying of concealed firearms, regardless of activity being engaged in, and having developed no information to support a belief that Plaintiffs were prohibited from possessing firearms, Defendants still refused to return Plaintiffs lawfully possessed property.  This detention of Plaintiffs' property continued beyond the time necessary for determination of the lawfulness of Plaintiffs' conduct, now impairing other rights.

First, once it was determined that the Plaintiffs possession of the firearms was lawful, there was no reason to continue to detain Plaintiffs or their property. Second, there was no reason to interfere with Plaintiffs' right to continue fishing. Third, there was no reason to require Plaintiffs to give Defendants a plain view

search of their vehicle compartments as a condition for the return of lawfully possessed, an constitutionally protected property.

**B.** **Defendants continued violations of Plaintiffs' rights by ongoing searches, detentions of property and deprivation of rights are not vitiated by the claims, if accepted, justifying the initial detention.**

Even if the Court adopts Defendants' claims that the initial confrontation by the responding officers was somehow not a violation of the rights of the fishermen to both fish and openly carry firearms, it does not vitiate the ongoing violations after determining the conduct of Plaintiffs was lawful.

Specifically, Defendants had no valid basis to place Plaintiffs unloaded firearms in Plaintiffs'' vehicles rather than returning the property directly to Plaintiffs on the pier.  There was no valid basis for Defendants to refuse to allow Plaintiffs to immediately rearm themselves as is their right under the constitution and laws of the state of Florida.  There was no valid basis for the closure of the pier in derogation of Plaintiffs' constitutional right to assemble, and statutory right to fish.

**C.** **Defendants' decision to impeded and interrupt a lawful gathering of individuals for lawful, protected purposes under the laws of the state of Florida, by the closure of public property based on the mere presence of firearms should not by condoned or sanctioned by this Court.**

12

Allowing Defendants' conduct to go without sanction will further erode the rights of Floridian's as recognized by the U.S. and Florida constitutions to bear arms as well as throwing a wrench into decades of Florida law recognizing the right to bear arms in accordance with Sec. 790.25 and the rest of the Florida Legislature's statutory scheme for the lawful use and possession of firearms.

Turning briefly back to the *Norman* decision relied on so heavily by Defendants, it is important to address the constitutional analysis engaged in by the *Norman* court.  That court recognized that the Florida Legislature, pursuant to Art. I, Sec. 8 of the Florida constitution the sole authority to regulate the bearing of arms in Florida.  The legislature has done so.  It has created a statutory scheme for the licensing of persons carrying concealed firearms under general circumstances. It has further created a statutory scheme that provides for the unlicensed concealed or open carry of firearms while engaged in certain activities, or by certain classes of persons such as law enforcement.

While the *Norma*n Court may have held that as an affirmative defense, the state is not required to disprove the various exceptions in Sec. 790.25, it most certainly did not hold, or find that the Legislature had intended, for those exceptions to subject all lawfully armed Floridians to detention, arrest, and prosecution as a condition of the exercise of their rights.

## V.   Defendants' sensitive area justification fails.

### A.   Defendants attempt to create new 'sensitive areas', not recognized by the Florida Legislature where the right to bear arms is circumscribed.

Nothing cited to by Defendants in their body worn camera footage, the footage of Plaintiffs proffered by Defendants, or any of the official reports of this incident made at the time cites to proximity to Government Cut, a coast guard station or a cruise terminal as a basis for their actions.  This argument is a post hoc justification by counsel for the Defendants to attempt to justify their conduct, much like their citation to the tragic shooting at a nearby high school.

In Florida, what places are or are not a sensitive area where firearms are not allowed is exclusively the province of the Legislature under Art. I, Sec. 8 of the Florida Constitution.  See Florida Carry v. Univ. of N. Fla., 133 So. 3d 966 (Fla. 1st DCA 2013)(holding that only the Legislature has the authority to regulate the bearing of arms in Florida. Despite this clear precedent Defendants argue, that they also have the authority to make decisions about the carriage of firearms based on proximity to an alleged 'sensitive area'.

The Florida Legislature has already spoken on this subject and delineated in Sec. 790.06(12), those places where neither concealed nor openly carried firearms are allowed.  With only one exception, not material here and not within Sec

14

790.06, none of those places have a proximity extending from their defined boundaries.  If the Florida Legislature wished to ban firearms within a defined number of feet or yards from a particular installation or activity it well knows how to do so.  It has chosen not to make such a law and instead to allow carry of firearms at any place in the state not specifically determined and identified by Sec. 790.06(12), Fla. Stat.

Defendants attempts to create a proximity rule in regard to one or more of those places must therefore fail.

### B.  Defendants stated facts while true, attempt to mislead the Court regarding their relevance.

Defendants attempt to insert as an additional justification of cruise ships passing by.  As discussed above this is irrelevant.  More importantly however and key to the credibility of the Defendants' argument on this point are the simultaneous attempts to rely on proximity to the cruise port, and cruise ship channel in their response to Plaintiffs on a Sunday morning.  However, Defendants then go on to concede that the primary day for cruise traffic in and out of the Port of Miami is Saturday, and offer no evidence or even suggest beyond mere implication, that any ships were in port or transiting the passage at any time on the date of the incident at issue.

## VI.   Claims of qualified and sovereign immunity.

Nether qualified nor sovereign immunity applies to claims under Sec.

790.33. *Fla. Carry, Inc. v. Univ. of Fla.*, 180 So.3d 137 (Fla.1st DCA

2015)(holding that the requirements of Sec. 768.28, Fla. Stat. are inapplicable in an

action under Sec. 790.33). As to the qualified immunity statute, the Legislature

created what is in essence a strict liability requirement for local governments who

attempt to enact or enforce their own policies, rules or regulations regarding

firearms.

## VII.  § 1985 liability.

Plaintiffs are unable to respond to Defendants claims regarding §1985

liability withing the time available.

## VIII.  Liability of officers Vidal, Bicelis, and Salaberria.

All three officers were present at the scene and violated Plaintiffs

constitutional rights by assisting in the continued and ongoing detention of the

individual Plaintiffs in violation of Plaintiffs rights.

Contrary to Defendants claims, Officer Bicelis directly participated in the

search of Plaintiffs property. After other officer had disarmed Plaintiffs and

illegally exposed the serial number of the firearms, contrary to the U.S. Supreme

16

Court's ruling in *Arizona v. Hicks*, 480 U.S. 321 (1987), Officer Bicelis can be seen on officer Garcia's body worn camera created a record of Plaintiffs' firearms serial numbers with her cell phone, a violation of as Sec. 790.335, Fla. Stat.[2]

Officer Vidal participated int eh continued detention of Plaintiffs Taylor in handcuffs despite his repeated complaint of pain well after the scene was secured and after there were more than sufficient.

As to Officers Salaberria, as well as Bicelis and Vidal, Plaintiffs were denied the opportunity to take or even schedule their depositions despite multiple requests.

## IX.   Inadvertence of Defendant City's posted policy prohibiting firearms is not a valid defense under Sec. 790.33, Fla. Stat.

Defendants' claim that the sign was inadvertently erected or allowed to remain despite removal of other signs by Defendant.  The uncontroverted fact is that the sign existed, was present on the property and purported to be a statement by the Defendant City, that it had a policy prohibiting firearms on the pier.

Just as the inadvertence of a citizen speeding because of inattention or failure to see a properly erected sign would not excuse a traffic ticket, Defendants'

---

[2] Defendants' failure to produce copies of the picture taken by officer Bicelis, is in itself aspirate violation of Florida law, Chpt. 119, in response to a public records request by Plaintiffs.  Nor were the pictures identified by Defendants in their mandatory disclosure under Rule 26.

failure to remove a sign that they had no power to place in the first instance at any time in the last century, much less after the 1987 creation of Florida's preemption law, should not excuse Defendant's promulgation and publication of such a policy. Furthermore, whether its agents relied on such a sign or not, they did attempt to enforce a published policy or rule of Defendant City, when Ranger Vinas ordered Plaintiffs to take their firearms off the pier.

If Ranger Vinas had merely notified Plaintiffs that open carry was illegal rather than claiming they could not have firearms on the pier, Defendants' argument might hold water.  Instead, Ranger Vinas, in reliance upon ignorance of the policy, but knowing that the sign declared the policy of the City, told Plaintiffs they could not have their firearms.

## X.     The alleged trap sprung on Defendants.

Much like with their irrelevant cruise ship argument, Defendants simultaneously admit that it was Florida Carry's customary procedure (which is not required by law) to notify law enforcement that members or supporters would be meeting up in their jurisdiction to fish while exercising their fundamental and statutory rights.  While Plaintiffs have conceded that Defendants were unable to read the email that was sent, and received, by Defendant City, this belies

18

Defendants spurious claims that Plaintiffs were seeking a confrontation or sought the violent response perpetrated by Defendants.

On the contrary Plaintiff Florida Carry has at all times attempted to minimize confrontation by providing the very type of warning information to law enforcement since it began conducting such events in 2010.

The fact, as well demonstrated here, is that despite Florida Carry's best efforts to educate and inform law enforcement regarding the rights of the citizens of this state, some law enforcement agencies and some of their employees are wholly opposed to the lawful exercise of the right to bear arms.

Instead of accepting this right and upholding their oaths the officer in this case chose to take aggressive action toward Plaintiffs with the oft repeated mantras of officer safety, public safety, and 'the times we live in" or 'how things are today'.  None of these are valid justification or excuse for the blatant disregard of Plaintiffs' and others' rights as demonstrated by the Defendants on June 24, 2018.

While any citizen must know the law and suffer the maxim that ignorance of the law is no excuse when they are wrong, Defendants here want special treatment for their ignorance of the law.  Defendants ask this Court to ignore their conduct and condone it by granting summary judgment.

19

XI.    **Conduct of Taylor as justification for Defendants' action.**

Without a doubt Plaintiff Taylor was angry with the Defendant Officers and expressed his displeasure repeatedly during his unlawful detention.  This does not make the violation of rights by Defendants any more justified.  Prior to being the victim of an aggravated assault and then a battery, as well as deprivation of his rights to bear arms, Taylor was nothing but polite in response to the ignorance of Ranger Vinas.  He attempted to carry out the intent of Florida Carry for such events, "education not intimidation".

XII.   **Request to allow additional time for further response.**

Since the entry of this Court's order on February 26, 2021, to file this response no later than today March 8, 2021, and in part because of stress due to the February 26 order, Plaintiffs' counsel has struggled to draft and file this response. While putting in his best efforts to do so, counsel recognizes that this response does not address all issues raised in Defendants' motions and is below his normal standards for legal briefs.

This is not a response that counsel would ever have wanted to submit to this Court, but is what counsel was able to accomplish within the time allowed.  It is hoped that the filing of this response will demonstrate to the Court that counsel is

attempting to comply with this Court's orders while suffering from a debilitating illness.

Counsel once again begs this Court for relief and consideration of the circumstances of this past year, and asks the Court to reconsider its February 26, order and to allow for additional time for further response or at a minimum to obtain additional discovery regarding the actions of the Defendants.

From just the three depositions counsel was allowed to complete defendant officers asserted their actions were in conformance with city policies that are directly contrary to the rights of citizens to keep and bear arms and in violation of Florida statute and case law, including from the United States Supreme Court.

Respectfully, the limitations under which counsel has performed have gotten better and recovery from his condition has improved but relapses are part of recovery.[3] Specifically counsel assures this Court that if given the opportunity he will better manage his calendar and the deadlines of this Court to complete discovery expeditiously and better keep to his professional obligations.

WHEREFORE, Plaintiffs and counsel request the Court:

A.  Deny Defendants' Motions for Summary Judgment,

---

[3] In speaking of relapses and recovery, counsel is not indicating to the Court that the medical condition involves drugs or alcohol and specifically states to this Court that the condition is a non-substance abuse medical diagnosis for which counsel has been receiving treatment since approximately September 2016.

**or in the alternative**

B.  Reconsider Plaintiffs' prior motion for additional time to respond.

C.  Grant Plaintiffs relief from deemed admissions,

D.  Allow Plaintiffs to respond to Defendants' motion for summary judgment
    after they have completed discovery in accordance with an amended case
    management plan.

E.  Grant all other relief deemed just and equitable by this Court.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing was served this 8th day of March 2021, via eService to the attached Service List:

/s/ Eric J. Friday
Eric J. Friday, Esquire
Florida Bar No.: 0797901
1919 Atlantic Blvd.
Jacksonville, Florida 32207
Telephone: (904) 722-3333
Service@ericfriday.com
efriday@ericfriday.com

23

**SERVICE LIST**

*FL Carry, Inc., et al. v. City of Miami Beach, et al.*
CASE NO.: 19-cv-22303-KMW

Robert F. Rosenwald, Jr.
robrosenwald@miamibeachfl.gov
Mark Fishman
markfishman@miamibeachfl.gov
City of Miami Beach
1700 Convention Center Drive
4th Floor-Legal Department
Miami, Florida 33139

Matthew Mandel
mmandel@wsh-law.com
lbrewley@wsh-law.com
Edward Guedes
eguedes@wsh-law.com
szavala@wsh-law.com
Jamie Cole
jcole@wsh-law.com
msarraff@wsh-law.com
Adam Hapner, Esq.
jcole@wsh-law.com
msarraff@wsh-law.com
200 E Broward Blvd.
STE 1900
Fort Lauderdale, FL 33301

Robert L. Switkes
Rswitkes@switkeslaw.com
paralegal@switkeslaw.com
bzappala@switkeslaw.com
407 Lincoln Rd.
Penthouse SE
Miami Beach, Florida 33139