UNITED STATES DISTRICT COURT
COURTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-22303-KMW

FLORIDA CARRY, INC., a
Florida not for profit corporation, et. al.
    Plaintiffs,

v.

CITY OF MIAMI BEACH, et. al.

    Defendants

_____/

**PLAINTIFFS' STATEMENT OF UNDISPUTED FACT IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDMENT**

Plaintiffs, by and through their undersigned counsel hereby filed and serve this Statement of Undisputed Facts in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment and state as follows:

**UNDIPUTED FACTS**

The following facts are tendered solely for purposes of responding to Defendants' motions for summary judgment and should not be deemed admissions for trial or other purposes. Consistent with the Court's orders Plaintiffs will not dispute any facts asserted by Defendants' statement of undisputed facts, except where directly contradicted by record evidence.

1

1. On Sunday, June 24, 2018 Plaintiffs Taylor, Jenkins, Devine, Philpot, Gutierrez, and Weiss, traveled to the city of Miami Beach.

2. Plaintiffs were gathering as members or supporters of Plaintiff Florida Carry for the purpose of fishing, and to exercise their fundamental enumerated right to keep and bear arms.

3. Plaintiffs were also gathering to exercise their First Amendment right to assemble, petition against the continued denial of the right to openly bear arms in the state of Florida, except as allowed under Sec. 790.25(3), Fla. Stat.

4. Plaintiffs' purposes included the education of members of the general public and the normalization of the presence of visible firearms to the extent allowed and recognized by Florida law.

5. Plaintiffs were in possession of printed copies of Florida law regarding the legality of openly carrying firearms while fishing for the purpose of handing out to interested persons to allay any concerns regarding the legality of their conduct.

6. Plaintiffs entered onto the fishing pier at South Pointe Park for the purpose of engaging in fishing, one of the express and designed purposes of the pier, at approximately 10:00 a.m.

7. At the entrance to the Pier was a sign erected by the City that asserted that firearms were not permitted on the pier.

8. Plaintiffs were approached by Park Ranger Vinas, an employee of Defendants.

9. Whether in reliance on his understanding of city policy, his misunderstanding of Florida law or reliance on the published and promulgated policy of the city on its sign at the pier's entrance, Vinas informed Plaintiffs that firearms were not permitted on the pier.[1]

10. At all times and in all instructions Ranger Vinas was acting within the course and scope of his employment as a city employee.

11. Ranger Vinas's express duty to was to act as a civilian security guard for the park, and in belief that firearms were not permitted on the pier, whether by written or unwritten ordinance rule or policy of the City, he gave Plaintiffs a directive.

12. The directive to remove their firearms from the pier was a directive of an agent of the City of Miami Beach.

13. In his capacity as an agent of the City, Ranger Vinas enforced a rule or policy of the city prohibiting firearms on the pier as stated by the City's published sign at the pier entrance.

---

[1] Contrary to the arguments set forth throughout Defendants' claimed facts and their motions for summary judgment, Ranger Vinas did not tell Plaintiffs that open carry was illegal, but instead claimed that firearms were not permitted on the pier.

14. Because Plaintiffs knew the law regarding the lawful possession of firearms, openly or concealed, while fishing, they declined to comply with Ranger Vinas's directive.

15. At no time did Plaintiffs threaten, act rudely, or otherwise fail to comply with any lawful directive from Vinas.

16. Plaintiffs attempted to educate Vinas, offering him a copy of the relevant statute, and explaining that they were acting in accordance with Florida law.

17. When Plaintiffs refused to comply with Vinas's directive and enforcement action, Ranger Vinas contacted the Miami Beach Police Department.

18. Initially, Defendant Officers Bolduc, Garcia, Villamil, and Rivera (Initial Officers) responded to the scene.

19. Any information or misinformation reported to the Initial Officers regarding what was taking place on the pier was the sole fault of Ranger Vinas or dispatch, all governmental employees.

20. No citizen or individual who was not a governmental employee contributed information to dispatch or the responding officers.

21. Upon arrival of the Initial Officers, they met with Ranger Vinas before proceeding to the pier.

22. Most of what was said by Ranger Vinas to the first officers to arrive is unknown.

23. During the depositions of officers Bolduc, Garcia, and Rivera[2], the officers were unable to recall the details of what Ranger Vinas reported to them.[3]

24. Upon entering the pier and encountering Plaintiffs, Initial Officers drew their firearms and detained all Plaintiffs who were present at that time.

25. Video cited by Defendants as well as other video from the officers' body worn cameras, demonstrates that each of the Plaintiff fishermen on the pier when Defendants initially arrived had their fishing lines in the water.

26. Each Plaintiff was no more than a few feet from their fishing equipment when the initial officers arrived on the pier.

27. Plaintiffs all had fishing rods and other tackle or bait for fishing.[4]

---

[2] The deposition of Officer Villamil could not be completed due to technical deficiencies with Zoom, on the part of Officer Villamil.

[3] For reasons known only to the officers, their various reports fail to detail the exact information provided by Ranger Vinas. During the depositions Plaintiffs were allowed to conduct, the officers could not recall those details, nor could they explain why they failed to activate their body worn cameras during their interaction with Ranger Vinas.

[4] Despite Defendants out of context use of one offhand comment by Plaintiff Gutierrez, Plaintiff Gutierrez's fishing tackle, a fishing spoon, is clearly evidenced on the video when he cases his line into the water and is specifically mentioned by Gutierrez in the video. The use of spoons is common. https://www.saltwatersportsman.com/fishing-spoons-lures-how-to/ (last visited March 8, 2021)("The popularity of casting spoons is almost universal.")

28. Each of the four initial officers, as well as all other officers who arrived on scene were openly carrying firearms.

29. After pointing guns at Plaintiffs, the initial officers proceeded to disarm the Plaintiffs.

30. Officers then searched each Plaintiff.

31. Plaintiffs were detained by officers at 10:09 and all four fishermen who were carrying firearms on the pier were placed in handcuffs between 10:10 and 10:12.

32. By 10:15 Defendant officer were made well aware of the provisions of Sec. 790.25 and Sgt. Bolduc describes the right to fish while openly carrying as a loophole.[5]

33. At 10:24 Officer Villamil tells Officer Garcia that he thinks the "screwed up" is no weapons on the pier because of "the sign".

34. By 10:32 Defendant officers who were present and monitoring radio traffic had been informed that none of the Plaintiffs who possess firearms were unlawfully in possession of those firearms.

35. During the intervening time, Plaintiffs had made clear to officers that Plaintiffs were there to fish and were doing so when officers arrived.

---

[5] An oft repeated idea, a legal loophole is a law with which a person disagrees.

36. Despite having been informed at 10:33 that there was no evidence that Plaintiffs with firearms were prohibited from possessing firearms, the detention in handcuffs would continue for another 62 minutes until approximately 11:35.

37. At 10:33 Sgt. Bolduc who was at that time the scene commander claimed to officer Villamil, that "the sign does have bearing.

38. After Defendants determined that Plaintiffs would not be arrested or charged with any crimes, Defendant Lt. Garcia, informed Plaintiffs of the next steps.

39. Defendants refused to return Plaintiffs' property to them at the scene.

40. Defendant officers ordered Plaintiffs to return to the parking lot of the park.

41. Defendant officer required Plaintiffs to open their vehicles for officers to place Plaintiffs' firearms in Plaintiffs' vehicles in an unloaded status, with all ammunition removed not just for chamber of the firearms, but with all ammunition stripped from all magazines.

42. Despite a specific request by Plaintiffs Wiess, Lt. Garcia, continued to refuse the return of Wiess's firearm on the pier.

43. It is the policy of the Miami Beach Police Department to detain any person in possession of a firearm for an investigatory stop.

44. It is the policy of the MBPD to unload all ammunition from a firearm during any interaction with an armed citizen.

45. It is the policy of the MBPD to not return firearms to an individual in a manner that is useful for self-defense until after the officer has departed from the scene.

46. Three of the four initially responding officers possessed a Florida Concealed Weapon Firearms License (CWFL) at the time of the incident.

47. A precondition of obtaining a CWFL is the signing of a statement, under oath, that the applicant has read and understand all provisions of Chapter 790, Fla. Stat.

48. Therefore at least 3 of the four initially responding officers knew or should have known that Florida law expressly allowed the possession of openly carried firearms while fishing.

Dated this 8th day of March 2021.

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that a copy of the foregoing was served this 8th day of March 2021, via eService to the attached Service List:

 /s/ Eric J. Friday
Eric J. Friday, Esquire
Florida Bar No.: 0797901
1919 Atlantic Blvd.
Jacksonville, Florida 32207
Telephone: (904) 722-3333
Service@ericfriday.com
efriday@ericfriday.com

## SERVICE LIST
*FL Carry, Inc., et al. v. City of Miami Beach, et al.*
CASE NO.: 19-cv-22303-KMW

Robert F. Rosenwald, Jr.
robrosenwald@miamibeachfl.gov
Mark Fishman
markfishman@miamibeachfl.gov
City of Miami Beach
1700 Convention Center Drive
4th Floor-Legal Department
Miami, Florida 33139

Robert L. Switkes
Rswitkes@switkeslaw.com
paralegal@switkeslaw.com
bzappala@switkeslaw.com
407 Lincoln Rd.
Penthouse SE
Miami Beach, Florida 33139