**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 19-cv-22303-KMW

FLORIDA CARRY, INC., a
Florida not for profit corporation, *et al.,*

       Plaintiffs,

vs.

CITY OF MIAMI BEACH, *et al.,*

       Defendants.

_____/

## REPLY IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

    Defendants, CITY OF MIAMI BEACH (the "City"), and MICHAEL GARCIA ("Officer M. Garcia"), KENNETH BOLDUC ("Sergeant Bolduc"), GUSTAVO VILLAMIL ("Officer Villamil"), BRIAN RIVERA ("Officer Rivera"), EDUARDO GARCIA ("Lt. E. Garcia"), JESSICA SALABARRIA ("Sergeant Salabarria"), NAHAMI BICELIS ("Officer Bicelis"), ROBERT MITCHELL ("Officer Mitchell"), LAVANIEL HICKS ("Officer Hicks"), and ELIZABETH VIDAL ("Officer El. Vidal") (collectively, the "Defendant Officers") (and collectively altogether, the "Defendants"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby file their Joint Reply in Support of their respective Motions for Summary Judgment. [D.E. 56, 59]. In support thereof, Defendants state as follows:

## INTRODUCTION

**A. Plaintiffs' Response Consistently Misstates and Disregards Applicable Law.**

    Plaintiffs' Response in Opposition to Defendants' Motions for Summary Judgment (hereinafter, Plaintiffs' "Response"), [D.E. 69], is marked by consistent obfuscation of the issues in this case and fundamentally flawed statements and applications of fact and law. Under Plaintiffs' interpretation of law, even where police officers personally observe persons engaging in activity that is generally illegal subject only to a handful of exemptions in the way of affirmative defenses that do not apply to everyone, the officers must first rule out the possibility of innocent conduct by disproving that those persons are entitled to an affirmative defense before they can lawfully assert reasonable suspicion to perform an investigatory stop or probable cause to arrest. Plaintiffs further ask this Court to rule that this obligation on law enforcement exists even in a crowded public area where officers have determined that the persons engaging in the generally criminal activity are armed with firearms

and thus pose a significant and present potential danger to the safety of officers and members of the public.

Put more simply in the context of this particular case, Plaintiffs essentially ask this Court to transform the common fishing rod into a cloak of invincibility for any person who seeks to openly carry a weapon in the State of Florida, by ruling that police officers not only lack probable cause to arrest persons observed openly carrying a firearm in public, but also that police officers lack even reasonable suspicion to conduct an investigatory stop of such persons, so long as there is a fishing rod in their vicinity. Such an abridgment of law enforcement's ability to investigate and abate articulable and potentially dangerous criminal activity disregards the substantial government interest to protect public safety and has been soundly and consistently rejected by the courts. Nevertheless, it is Plaintiffs who throughout their Response argue that Defendants have asked this Court to go "well beyond" any prior holding in a manner that would yield "absurd results" and abridge persons from exercising a "fundamental enumerated right guaranteed by" the Constitutions of the United States and the State of Florida. However, Plaintiffs' position is premised upon a misapprehension of law which improperly regards the right to openly carry a firearm as a fundamental constitutional right subject to the same treatment as all firearm possession. In fact, the Supreme Court of Florida has expressly rejected the notion that the right to openly carry a firearm in public places is a fundamental constitutional right. *Norman v. State*, 215 So. 3d 18, 21 (Fla. 2017).

In attempting to advance their unsound position, Plaintiffs consistently fail to acknowledge any distinction between openly carrying a firearm in Florida – which is not an open carry state – and all other manners of firearm possession. Throughout their Response, Plaintiffs improperly equate the distinct crimes of carrying a concealed weapon and openly carrying a weapon in interpreting Florida Statutes and opinions of Florida courts, wholly disregarding *Norman*'s express finding that "the Florida Legislature has reasonably concluded that concealed carry serves the State's interests, while open carry does not." *Norman,* 215 So. 3d 18, 39-40. Plaintiffs go even further by repeatedly conflating the right to openly carry firearms in Florida with the right to possess a firearm in one's home or on one's own property. For example, Plaintiffs argue that under Defendants' interpretation of Fla. Stat. § 790.25, every individual who possesses a hidden firearm in their home without a concealed weapons license is subject to arrest for the mere possession of a firearm, and even suggest that accepting Defendants' interpretation of the law would be akin to declaring every person in the State of Florida who merely possesses a firearm "a criminal subject to arrest and detention." *See, e.g.*, [D.E. 69, at 4]. As explained more fully below, Plaintiffs' hyperbolic mischaracterizations of the well-founded arguments that Defendants have asserted are erroneous in all respects.

**B. Defendants' Positions.**

Defendants' general position is that police officers in Florida who observe a person openly carrying a firearm in public – a second degree misdemeanor under Fla. Stat. § 790.053 – have immediate reasonable suspicion to conduct an investigatory stop and also probable cause to arrest, without first ruling out the possibilities that the person is eligible to claim an affirmative defense and that one of the affirmative defenses applies, all criteria necessary for persons to enjoy protection under Fla. Stat. § 790.25. [1] Based on this – or even less expansive interpretations of the applicable law – the evidence in the record, and the undisputed facts, Defendants respectfully submit that they are entitled to judgment as a matter of law in this case, as there exists no genuine issue of material fact for trial as to any of Plaintiffs' claims against any of the Defendants. Additionally, Defendant Officers submit that they are further entitled to summary judgment pursuant to the protections afforded them under qualified immunity and immunity under Fla. Stat. 768.28(9)(a).

The undisputed facts in this case show that upon visually confirming that at least four of the five men were openly carrying firearms on the public Pier, the Defendant Officers had at minimum both reasonable suspicion to conduct an investigatory stop of all of the men, and probable cause to arrest those who were openly carrying firearms. [2] At the time the investigatory stop was initiated, the Defendant Officers had no knowledge regarding any of the men's identities, propensities, criminal histories, or otherwise. The undisputed facts establish that this was, at least in part, due to Plaintiffs' failure to abide by their normal custom and practice of notifying cities that they will be holding an "open carry" event in advance of their arrival, which is normally done to provide a municipality and its law enforcement personnel with some forewarning in the foreseeable likelihood that police dispatch receives calls from concerned citizens regarding "a man with a gun." [ST. ¶¶ 5-9]. Upon stopping and disarming the individual Plaintiffs, Defendant Officers located additional concealed firearms and knives that the men had in their possession or immediate vicinity. Several minutes into the investigatory stop, another visibly armed individual – Plaintiff Weiss – arrived at the Pier. In total, at least six (6) firearms and multiple knives were in the immediate possession of the individual Plaintiffs when the Defendant Officers arrived on the scene. It is well-settled that the presence of even a single firearm in a parking lot heightens the reasonableness of officers' conduct under the totality

---

[1] A narrow exception may exist where it is plainly apparent to officers that there is no ambiguity as to whether the person is openly carrying the firearm lawfully. However, that was not the case here.
[2] This is especially true where the officers did not have any ability to readily ascertain that each of the men were openly carrying their firearms pursuant to an exemption as provided under Fla. Stat. § 790.25(3), or whether any of the men were subject to any of the several disqualifiers under Fla. Stat. § 790.25(2), which would render them ineligible to claim any exemption.

of the circumstances. *See, e.g., Florida v. J.L.*, 529 U.S. 266, 272 (2000). Here, the reasonableness of the Defendant Officers' conduct was tremendously heightened, and they were unequivocally justified to conduct a reasonable investigation and to take every reasonable precaution necessary – including returning Plaintiffs' firearms in a manner that ensured officer safety following the detention – to protect the safety of themselves and others on and around the Pier, without subjecting themselves or the City to civil liability.

Even if the Defendant Officers were inclined to provide the Plaintiffs with an opportunity to establish that they were exempt from the crime of open carry prior to placing them under arrest, they had no ability to safely do so absent – at minimum – conducting an investigatory stop. Considering the facts, it was entirely reasonable for the Defendant Officers to approach with firearms drawn and to take all actions necessary to ensure safety, including handcuffing and disarming the men, while an investigation was conducted. *See U.S. v. Spann*, US Dist. Lexis 57386 (S.D. Fla. 2015) (citing *State v. Burgos*, 994 So. 2d 1212, 1214 (Fla. 5th DCA 2008)) ("Florida courts and this Court have recognized that reasonable suspicion and probable cause are based on probabilities, not absolute certainty, and that it is not necessary for police allow an individual to continue in possession of a firearm while they confirm the suspected crime to an absolute certainty.").

Defendants do not ask this Court to interpret the law in any manner that turns the prior holdings of courts in this jurisdiction "on its head", as Plaintiffs claim in their response. Rather, Defendants submit that under the undisputed facts of this case and the great weight of authority applicable in this jurisdiction, the investigatory stop and all other actions taken by Defendants with respect to the Plaintiffs were lawful under both Florida and federal law and did not violate any of Plaintiffs' rights. As to arguments unique to the City, the City asserts that Plaintiffs have failed to remotely establish through undisputed record evidence any plausible inference that the City had any official policy or custom of violating the rights allegedly violated in this case, or that the City violated Fla. Stat. § 790.33, as more fully set forth herein and in the City's Motion for Summary Judgment. As to the Defendant Officers, they further maintain that they are entitled to summary judgement on all of Plaintiffs' federal claims based on qualified immunity. As to Plaintiffs' claims under Florida law, Defendant Officers maintain they are entitled to summary judgment based upon, *inter alia*, Florida's waiver of sovereign immunity as provided under § 768.28(9)(a), because there exists no evidence that they acted in a malicious, wanton, or willful disregard of Plaintiffs' rights. Accordingly, and for the reasons more fully set forth herein and in Defendants' respective Motions for Summary Judgment, Defendants assert that no genuine issue of material fact exists to create any issue for trial

in this cause and respectfully ask this Court to grant summary judgment in their favor on all of Plaintiff's claims asserted against them in this matter.

## MEMORANDUM OF LAW

I.   **Plaintiffs' Arguments Regarding The Proper Interpretation And Application Of Fla. Stat. § 790 Are Untenable And Unsupported By Any Applicable Legal Authority**

A.   **Reliance On The Plain Language of Fla. Stat. § 790.25 Has Not Been Consistently Rejected In This Context and Will Not Lead to Absurd Results.**

In their Response, Plaintiffs argue that reliance on the "plain language" of Fla. Stat. § 790.25 has been consistently rejected in the context of this case pursuant to "binding precedent." However, the cases cited by Plaintiffs in support of this proposition are entirely factually distinguishable and inapposite to facts and issues presented in this case. Moreover, Plaintiffs' argument that "every Court to consider the statute has ruled that the plain language of § 790.25 cannot be relied upon when to do so would lead to an absurd result" is inconsequential under the facts of this case, because under the facts of this case the result of such reliance is neither absurd not even remotely comparable to those which led courts to reject the plain language of the statute in Plaintiffs' cases.

To illustrate this fact, Defendants note that both *Peoples* and *French* – upon which the Plaintiffs heavily rely – involved reversals of criminal convictions of persons who were charged for carrying concealed weapons in or on their own property just outside of their own home. *Peoples v. State*, 287 So.2d 63 (Fla. 1973); *French v. State*, 279 So.2d 317 (Fla. 4th DCA 1973). These narrow holdings applied only where there existed truly absurd results from relying upon the plain language of § 790.25. For instance, Florida's Fourth District Court of Appeal declined to extend the holding *Peoples* to apply in the context of a firearm carried in the parking lot of a multiple unit apartment dwelling where the appellant resided. *Sherrod v. State*, 484 So. 2d 1279, 1281 (Fla. 4th DCA 1986) ("When a person carries a readily accessible, concealed weapon in a public parking lot, he greatly increases the likelihood that the weapon will ultimately be used against his fellow citizens. It would be unreasonable for a person to assume that the legislature did not intend to address this danger in the concealed weapons statute."). By comparison, an investigatory detention or even arrest of the individual Plaintiffs in this case after observing them openly carrying firearms on a crowded public Pier is not remotely like an arrest and conviction for carrying a concealed weapon in one's home, just outside one's home, or even in the parking lot outside of one's apartment building. Thus, it is entirely disingenuous for Plaintiffs to claim that reliance on the plain language of § 790.25 has been consistently rejected in *this* context.

Plaintiffs also argue that if Defendants' interpretation of § 790.25 is followed, then even the Defendant Officers themselves were subject to arrest for committing the crime of open carry. Here

again, Plaintiffs ignore obvious distinctions that belie their argument. As an initial matter, police officers submit themselves to rigorous vetting by which it is confirmed that they are not subject to the disqualifiers that exist under § 790.25(2), including psychological evaluations, criminal background checks, drug testing, and several other similar screenings as a requisite of their employment, and typically display a uniform and badge, which allow anyone to visually and readily ascertain that they are very likely entitled to the protections of § 790.25(3). Indeed, prior to any police officer openly carrying a firearm, they have provided evidence to their municipality and to the State of Florida establishing with reasonable certainty that they qualify for the affirmative defense. [3] By contrast, there were no readily ascertainable assurances that Plaintiffs were entitled to the protections of § 790.25(3) prior to the investigatory stop. Plaintiffs failed to even provide the City or its police department with any notice that they would be conducting a group "open carry" event, although they could have and normally do as a matter of custom and practice.

Despite Plaintiffs' claim that absurd consequences will result if their interpretation of the law is not followed by the Court, the stark reality is that the opposite is true. If Plaintiffs' interpretation of the law is followed, then any person would be entitled to walk down Ocean Drive in Miami Beach while openly carrying firearms, so long as they are near a fishing pole and not committing some other readily observable crime. It further means that law enforcement, despite witnessing generally illegal activity that may very well constitute a present and significant danger, would have no recourse to intercede. Under Plaintiffs' theory, law enforcement may have to wait until an armed individual selects the most strategic vantage point and commits some heinous act before detaining or arresting the individual – at which time they can lawfully investigate whether the individual is among those persons eligible to claim the affirmative defense of "going to or returning from a fishing expedition" under § 790.25. Such an interpretation renders Florida's open carry law virtually meaningless, inhibits the substantial government interest of promoting public safety, and directly conflicts with the Florida Legislature's intent in establishing Chapter 790.

**B. It Is Well-Established That The Exemptions Provided Under Fla. Stat. § 790.25 Are To Be Read As Affirmative Defenses.**

Plaintiffs' Response further erroneously argues that interpreting Fla. Stat. § 790.25 as a mere affirmative defense "would invalidate the purpose of the statute which recognizes as its underpinning,

---

[3] This is not intended to suggest that no police officer openly carrying a weapon could be lawfully subjected to an investigatory stop or arrest under Fla. Stat. § 790.053. Indeed, there are certainly scenarios where a police officer could be out of uniform, outside of his jurisdiction, or otherwise not unambiguously entitled to the protection afforded under § 725.025.

the constitutional right to bear arms." However, Plaintiffs wholly misstate well-established law and its application here as well. As throughout their Response, Plaintiffs improperly conflate the constitutional right to bear arms with a right to openly carry arms. In so doing, Plaintiffs wholly disregard unequivocal precedent established by the Florida Supreme Court. *See Norman*, 215 So.3d 18 (upholding the constitutionality of § 790.053 and specifically rejecting "the notion that the historical right protected by the Second Amendment is the right to openly carry.").

Despite Plaintiffs' suggestions to the contrary, openly carrying a firearm in the State of Florida is generally a crime, and not a "fundamental right." *See* § 790.053. Florida and federal courts analyzing Florida law have made clear that its prohibition on openly carrying firearms survives constitutional scrutiny. *See, e.g., Norman*, 215 So.3d 18. Nevertheless, Plaintiffs' Response repeatedly regards openly carrying a firearm in the State of Florida as indistinguishable from carrying a concealed weapon or even merely possessing a firearm in the home, despite the panoply of courts which have recognized the significance of such distinctions. Despite the explicit holding in *Norman*, Plaintiffs essentially ask this Court to rule that the activity of openly carrying a firearm in public is ***presumptively lawful***, by interpreting exemptions available under § 790.25 not as affirmative defenses, but as elements of the crime of openly carrying a firearm under § 790.053.

Largely undermining Plaintiffs' position is the fact that the Florida Legislature's intent to make open carry of firearms generally illegal is well-established. In analyzing Florida's statutory scheme for regulating the manner of carrying firearms and affirming the constitutionality of § 790.053, *Norman* further recognized that while ch. 790, Fla. Stat. does recognize the constitutional right to bear arms in a *lawful* manner, the intent of the legislature was to "promote firearms safety and to curb and prevent the use of firearms in come and by incompetent persons", which chiefly included criminalizing the open carrying of firearms in public under most circumstances, while simultaneously ensuring that an individual's ability to carry a firearm for self-defense would not be diminished, by allowing anyone with a concealed-carry license, which are granted liberally, to carry a firearm in public, so long as the firearm is concealed. *Id*.

Furthermore, *Norman* soundly rejected Plaintiffs' argument regarding the proper reading of § 790.25, expressly recognizing that the statute's exemptions to the prohibition against openly carry firearms constitute affirmative defenses to a prosecution for a charge of open carry. *Norman*, 215 So. 3d 18 ("We also do not discuss Norman's claim that the exemptions under § 790.25(3) are elements of the crime of openly carrying a firearm under § 790.053 because we find this claim is devoid of merit."). Undeterred by clear precedent, Plaintiffs maintain that § 790.25 cannot be read as an affirmative defense, ostensibly because it is well-settled that probable cause to arrest depends on the

elements of the alleged crime, and not the mere speculative possibility that an affirmative defense may be applicable. *See, e.g.*, *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004). Under Florida law, it is a second-degree misdemeanor "for any person to openly carry on or about his or her person any firearm." Fla. Stat. § 790.053. Those are the elements of the crime. Fla. Stat. § 790.25(3) provides that the above prohibition against openly carrying a firearm does not apply in certain enumerated circumstances, which constitute affirmative defenses to the crime. A crucial factor to recognize – and what Plaintiffs repeatedly ignore – is that § 790.25 does not extend the protections of § 790.25(3) to everyone. To the contrary, § 790.25(2) provides numerous disqualifiers that render persons ineligible to claim the protections under § 790.25(3). Importantly, the criteria which renders one eligible or ineligible to claim the protections – such as being a felon, being subject to an injunction for stalking, or being an alcoholic – are generally not facts that be visually or readily ascertained absent an investigatory stop.

### C. Defendants' Position Does Not Require This Court to Depart from Established Law and Will Not Result in Any Derogation of Existing Fundamental Rights.

Despite Plaintiffs' meritless contention, Defendants have not asked this Court to turn a "long line of decisional law on its head and declare that any person in the state of Florida in possession of a firearm is not exercising a constitutional right, but instead is a criminal subject to arrest and detention." Further still, Plaintiffs argue that this Court must rely "on the decisions of the courts" over the "plain language" of Fla. Stat. § 790.25, claiming that failure to do so would "subject millions of Floridians to the same abusive treatment suffered by Plaintiffs in this case." Plaintiffs' hyperbolic arguments are meritless, and the cases cited by Plaintiffs in to advance their proposition are factually distinguishable and entirely inapposite to the case at bar.

Defendants have never contended that all persons who possess firearms are criminals subject to arrest or detention. The distinction between persons openly carrying firearms on a crowded public Pier and persons legally in possession of a firearm in countless other contexts is obvious. As set forth above, Florida is not an open carry state and open carry of firearms in Florida is the exception, not the rule. Moreover, the facts of this case are case was extraordinary even under open carry. For instance, in a supposedly inadvertent exception to their regular practice, Plaintiffs failed to provide the City or its police department with any advance notice that they were going to be engaging in a firearm demonstration on the South Pointe Pier. This lack of notice deprived the City or its police department from any ability to plan for foreseeable issues or to secure adequate assurances in advance and resulted in Defendant Officers having no reason to know whether Plaintiffs were law abiding citizens or domestic terrorists when they responded to the dispatch call advising of multiple men with

guns on the Pier. Moreover, the number of visibly armed men, number of weapons, and the crowded, security-sensitive location created unique added concerns. *See Florida v. J.L.*, 529 U.S. 266, 272 (2000) ("Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions."). In less unusual circumstances, it is possible that there will be less of a perceived exigency or that adequate assurances of an individual's compliance with Florida's open carry law can be more readily established. In either case, finding for Defendants under the facts here is entirely consistent with established law and presents no threat to derogation of any fundamental right.

## II.     Defendant Officers Are Entitled to Qualified Immunity On Plaintiffs' Federal Claims

As set forth in Defendant Officers' Motion for Summary Judgment, the undisputed facts clearly demonstrate that all Defendant Officers were acting within the scope of their discretionary authority at the time of the alleged violations in this lawsuit. Plaintiffs have not disputed this in their Response. Accordingly, the burden shifts to Plaintiffs to point to facts that demonstrate Defendant Officers violated a constitutional right of theirs that was clearly established at the time of the alleged violations. Plaintiffs have wholly failed to meet this burden in their Response and cannot meet this burden under the facts of this case. To be sure, Plaintiffs' Response fails to address or rebut Defendant Officers' arguments for qualified immunity, aside from erroneously contending that qualified immunity is not available for claims brought under § 790.33. Accordingly, and for the reasons set forth herein and in their Motion for Summary Judgment, Defendant Officers respectfully request that summary judgment be granted in their favor on all of Plaintiffs' federal claims asserted against them, on the basis that they are entitled to qualified immunity. Nevertheless, to the extent that Plaintiffs' Response can be deemed to implicitly assert arguments germane to the qualified immunity analysis, Defendant Officers assert that such arguments have been rebutted herein.

### A.   Defendant Officers' Actions Were Objectively Reasonable.

Defendant Officers agree with Plaintiffs that the totality of the circumstances is indeed a relevant consideration when analyzing the reasonableness of a search or seizure under the Fourth Amendment on summary judgment. However, Plaintiffs' reliance on the decisions in *Mackey* and *Regalado* to support their argument that the totality of the circumstances did not justify the Defendant Officers' actions is misplaced. *Mackey v. State*, 124 So. 3d 176 (Fla. 2014); *Regalado v. State*, 25 So. 3d 600, 606-07 (Fla. 4th DCA 2010). In relying on these cases, Plaintiffs attempt to support their argument with decisions rendered by Florida courts in criminal cases that have been called into question and which turn on material facts that are easily distinguishable from those in the case at bar. Most significantly, neither *Mackey* nor *Regalado* involved the *open carry* of a firearm. Rather, the officers in those cases conducted searches with only a mere suspicion that subjects with bulges in their clothes

were carrying *concealed* firearms. Numerous courts have recognized that whether the weapon at issue is concealed or openly carried can change the analysis to be conducted. While there is some conflict among Florida courts about whether probable cause or reasonable suspicion for a search and seizure exists in the context of a concealed firearm, there exists far less authority in the context of a firearm that is openly carried. Perhaps that is because, as Defendants contend here, the probable cause to arrest is fairly clear. Nevertheless, there is authority to provide guidance.

Although it is illegal to publicly carry a concealed weapon without a permit under Florida law, the right to carry a concealed firearm provided one has a permit to do so is well-established. Conversely, Florida is not an open carry state. As a general rule, Florida law prohibits the open carry of a firearm with a handful of limited exceptions that many categories of persons are disqualified from claiming. *See* § 790.053(1); § 790.25. As with the exceptions to the crime of open carry provided under § 790.25, the possession of a permit to carry a concealed weapon is considered an affirmative defense rather than an element of the crime. Even in the context of Florida law governing concealed carry, the Eleventh Circuit and other courts have expressly found that an individual's admission to carrying a concealed weapon provides police officers with reasonable suspicion to believe that the individual is committing the crime of carrying a concealed weapon under Florida law. *U.S. v. Lewis*, 674 F.3d 1298 (11th Cir. 2012).

As a practical matter, under Florida's concealed carry and open carry laws, resolving any ambiguity as to whether an affirmative defense applies to an individual who is open carrying requires a significantly more in-depth and time-consuming inquiry by an officer in the field than determining whether an individual carrying a concealed weapon is in possession of a valid permit, which is typically sufficient to resolve an ambiguity of whether one carrying a concealed weapon is entitled to the affirmative defense. This is logical, because to receive the permit, an individual has already provided information required by the State, which has vetted the information and certified that the individual meets certain objective statutory requirements, including not being a convicted felon, not having been committed to a mental institution, and having displayed competency in handling a firearm. Fla. Stat. § 790.06(2). For open carry, no such scheme exists, and officers encountering an unknown individual openly carrying a firearm generally have no mechanism to readily resolve an ambiguity as to whether one who is openly carrying even eligible to claim the protections under § 790.25(3), or if they are subject to one of the several disqualifiers under § 790.25(2).

Despite the numerous court rulings which have found probable cause to exist even in the context of a person suspected to be carrying a concealed weapon, Plaintiffs argue that the Defendant Officers here had no reason or basis to believe that Plaintiffs' open carrying of firearms on the Pier was illegal.

However, openly carrying a firearm is generally illegal under Florida law. Defendant Officers were not required to disprove whether the affirmative defenses applied for each of the Plaintiffs prior to having reasonable suspicion to stop and probable cause to arrest under these facts. Placing such a burden on officers in all cases of open carrying would be entirely untenable. Nevertheless, although Defendant Officers had probable cause to arrest the individual Plaintiffs and no duty undertake the burden of thoroughly vetting five persons to determine their entitlement to affirmative defenses, they used their discretion to detain rather than arrest the Plaintiffs while an investigation was conducted.

Alternatively, and at a very minimum, Defendant Officers' actions were supported by *arguable* probable cause under the facts and circumstances they faced, thus entitling them to qualified immunity on this basis as well. To be sure, District Courts sitting in this State have found that an officer's passing observation of a firearm that is sitting on the center console inside of a vehicle provides officers with at least arguable probable cause to arrest an individual for openly carrying a firearm in violation of § 790.053, thereby entitling the officer to qualified immunity. *See Jones v. City of Lake City*, U.S. Dist. LEXIS 203126 (M.D. Fla. 2013). An official "need not have actual probable cause but only 'arguable probable cause,' *i.e.*, the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). "Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment' and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Poulakis v. Rogers*, U.S. Dist. LEXIS 63732, *5-6 (11th Cir. 2008).

**B. Number of Visibly Armed Individuals and Weapons Heightens the Reasonableness of Defendant Officers' Conduct Under the Totality of the Circumstances.**

It is well-established that the reasonableness of an officers' conduct under the totality of the circumstances is heightened greatly by the admitted presence of firearms, which courts universally recognize can pose a serious risk to the safety of officers and other members of the public, especially in a crowded public area. *See Lewis*, 674 F.3d 1308-1309 (recognizing the presence of two firearms posed a serious risk to the safety of the officers as well as the other individuals present in a crowded parking lot and heightened reasonableness of officers' conduct); *see also Florida v. J.L.*, 529 U.S. 266, 272, (2000) ("Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions. Our decisions recognize the serious threat that armed criminals pose to public safety; *Terry*'s rule, which permits protective police searches on the basis of reasonable suspicion…responds to this very concern.") (citing *Terry*, 392 U.S. at 30); *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) (per curiam) (observing that armed suspects "pose a serious and present danger to the safety of the officer"); *see also U.S. v. Gibson*, 64 F.3d 617, 624 (11th Cir. 1995).

Here, Defendant Officers observed at least four of the individual Plaintiffs openly carrying semiautomatic pistols on their persons upon first making visual contact with them on the Pier. As to the Plaintiff Devine, who was not openly carrying a firearm but was in possession of a large buck-knife, the Defendant Officers had at minimum reasonable suspicion to detain him while they investigated his associates, and reasonable grounds to do so based on the powerful concern for their safety. It should also be noted that Devine was never handcuffed and never asked whether he was free to leave. *See Lewis*, 674 F.3d 1298 ("Once the officers had [reasonable suspicion of criminal activity], they were not obliged to let three of the four associated individuals walk about freely while they investigated McRae, in light of the officers' powerful concern for their own safety."); *see also Samson v. California*, 547 U.S. 843, 855 n.4 (2006) ("The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion."). Furthermore, Defendant Officers learned that more firearms – as well as knives – were in the possession of the individual Plaintiffs after the stop was initiated. Plaintiff Weiss also arrived at the Pier after the first five individual Plaintiffs were detained, and he too was visibly armed, giving rise to a reasonable concern that more armed men would be arriving at the Pier. Finally, during course of the investigatory stop, Plaintiff Taylor made comments to the Defendant Officers that would arise concern in anyone, including asserting that Plaintiffs' firearms were "bigger and more powerful than yours." Accordingly, there can be no doubt that the Defendant Officers were faced with a legitimate potential danger that under the totality of circumstances heightened the reasonableness of their conduct with respect to Plaintiffs, though such heightening is not even necessary to find for the Defendant Officers under these facts.

**C. No Violation of Clearly Established Statutory or Constitutional Rights.**

A right is "clearly established" if its contours are sufficiently clear such that "a reasonable official would understand that what he is doing violates that right." *Bashir v. Rockdale County*, Ga., 445 F.3d 1323 (11th Cir. 2006) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, (1987)); *see also Hope v. Pelzer*, 536 U.S. at 741, ("[T]he salient question…is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."). Sources of law notifying an official of a statutory or constitutional right include (1) specific statutory or constitutional provisions, (2) principles of law articulated in decisions, and (3) factually similar cases decided by state and federal courts in the jurisdiction. *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007). "[A]n officer on duty in the field is entitled to make a reasonable interpretation of the law he is obligated to enforce." *Habiger v. City of Fargo*, 80 F.3d 289, 296 (8th Cir. 1996).

Here, Defendant Officers submit that there exists no case decided by state or federal courts in this jurisdiction that is sufficiently factually similar to the case at bar, nor specific statutory or

constitutional provisions, nor articulated principals of law that would give the Defendant Officers fair warning that any of their conduct in this case was unlawful. Plaintiffs' failure to cite to any case that is remotely on point or controlling to support any of their positions is demonstrative of that fact. By contrast, Defendant Officers contend that the statutory and constitutional provisions and the principles of law articulated in the decisions relied upon by Defendants herein and in their Motions for Summary Judgment are far more applicable to the facts of this case and support a finding of reasonableness as to Defendant Officers' conclusions that their conduct did not violate Plaintiffs' rights. *See*, *e.g.*, *Norman*, 215 So. 3d 18; *Lewis*, 674 F.3d 1298.

**III.    Plaintiffs' Argument Regarding No Firearm Exception Irrelevant.**

As an initial matter, Plaintiffs' broad argument that there is "no firearm exception to the Fourth Amendment" is irrelevant under these facts, where the Defendant Officers personally observed five of the six individual Plaintiffs visibly armed and committing what is generally a firearm crime, and thus had reasonable suspicion to conduct an investigatory stop and probable cause to arrest. Moreover, regardless of probable cause, Plaintiffs' argument disregards the case-by-case, factually intensive analysis that must be conducted to determine reasonableness under the Fourth Amendment.

The *Regalado* and *Slydell* cases on which Plaintiffs rely – in addition to being factually distinct in several material aspects from this case – do not stand for this broad proposition. First, the facts underlying *Regalado* and *Slydell* are materially distinguishable because the officers in those cases relied solely on an anonymous tip that an individual was in possession of a concealed gun without anything more. *Regalado v. State*, 25 So. 3d 600 (Fla. 4th DCA 2009); *Slydell v. State*, 240 So. 3d 134 (Fla. 2d DCA 2018). Here, the Defendant Officers personally observed five of the six individual Plaintiffs actively committing the crime of open carry in a particularly safety-sensitive location.

Additionally, *Regalado* has been rejected and criticized by District Courts sitting in this State as contrary to, or distinguishable from, at least two other Florida District Court of Appeal cases. *See U.S. v. Montague*, No. 10-20368-CR, U.S. Dist. LEXIS 86034 (S.D. Fla. 2010) (citing cases). In *U.S. v. Fountain*, the District Court for the Northern District of Florida questioned *Regalado*'s validity, providing an instructive explanation in rejecting a criminal defendant's reliance upon *Regalado* and finding that officers had not violated the Fourth Amendment when they conducted an investigatory stop of an individual who was observed openly carrying a gun:

"The court rejects the Defendant's assertion that the possession of a weapon did not provide a reasonable suspicion of criminal activity. Defendant cites *Regalado v. State*, 25 So. 3d 600, 606-07 (Fla. 4th DCA 2010), in which the court concluded that "stopping a person solely on the ground that the individual possesses a gun violates the Fourth Amendment" where "neither the anonymous tip nor the officer's observations revealed any suspicion of past, present, or future criminal

activity;" and also *Baptiste v. State*, 995 So. 2d 285 (Fla. 2008) (same). Both cases are materially distinguishable on their facts because the officers there had relied on an anonymous tip that an individual possessed or displayed a gun. Here, by contrast, Agent Woolcock had <u>personally observed Fountain openly carrying a weapon moments before the deputies arrived, which is a violation of Florida law</u>. *See State v Bethel*, 93 So. 3d 410, 413 (Fla. 4th DCA 2012) (citing Fla. Stat. § 790.053). Also, in an analogous situation, the Eleventh Circuit has found that <u>a stop was supported by reasonable suspicion where the individual was known to be carrying a concealed weapon, despite the fact that the individual may have a valid affirmative defense of a lawful permit to carry a weapon</u>. *See Lewis*, 674 F.3d at 1304."

*U.S. v. Fountain*, 2013 U.S. Dist. LEXIS 128873, *10-13, 2013 WL 4833090 (N.D. Fla. 2013).

Contrary to Plaintiffs' contention, Defendants do not argue that there is a firearm exception to the Fourth Amendment *per se*. However, Defendants do note that both Florida and federal courts, and the Supreme Court, have recognized that the presence of a firearm is highly relevant to the reasonableness of officer conduct under the totality of the circumstances for purposes of the Fourth Amendment. *See J.L.*, 529 U.S. at 272; *Mimms*, 434 U.S. at 112; *Gibson*, 64 F.3d at 624.

**IV.     Additional Items Relevant to Summary Judgment and Plaintiffs' Response**

**A. Plaintiffs' Detention Was Justified & Objectively Reasonable In Relation to Its Purpose.**

In addition to Plaintiffs' arguments that the investigatory stop and detention was unlawful, Plaintiffs argue that Defendants continued to violate their Constitutional rights "after determining that no crime had been committed." However, Plaintiffs' argument in this regard is unsupported by the facts. The Eleventh Circuit has held that no rigid time limitation or bright line rule exists regarding the permissible duration of an investigatory stop. *Roberts v. Kahl*, U.S. App. LEXIS 2908, *1 (11th Cir. 2021). Instead, no matter the timing, the duration of the detention must be reasonable in relation to the purpose of the stop. Whether such duration is reasonable depends on the particular facts of each case. Relevant facts to be considered are whether the detention related to the need to maintain safety of the officers or to protect the integrity of an ongoing investigation. *See U.S. v. Gopie*, 347 Fed. Appx. 495, 500-501, 2009 U.S. App. LEXIS 21371, *10-11 (citing *U.S. v. Gil*, 204 F.3d 1347, 1350-51 (11th Cir.) (finding *Terry* stop did not ripen into arrest where suspect was handcuffed and detained in the back of a patrol car for <u>seventy-five minutes</u> for the safety of the officers and ongoing investigation) (emphasis added); *see also U.S. v. Street*, 472 F.3d 1298, 1306 (11th Cir. 2006) (agents who stopped defendant to question him for a valid purpose could pursue questioning "throughout the period leading up to the existence of probable cause, which was established no more than an hour after the stop was made").

Under the undisputed facts and totality of the circumstances in this case, the scope and duration of Plaintiffs' detention was objectively reasonable and did not violate Plaintiffs' rights. The total time from the first Defendant Officers contacting the Plaintiffs on the Pier and Plaintiffs being advised

they were free to go was approximately 1 hour and 18 minutes. [ST. ¶ 54]. In the scope of a routine traffic stop, such a period of detention would generally be unreasonable. Here, the detention was justified and reasonable under the unique facts and circumstances, which included the number of suspects that were simultaneously detained, at least five of whom required attention, from being safely disarmed to being vetted for exemptions to the crime of open carrying a firearm, among other factors. As set forth above, determining whether an affirmative is available to a person observed open carrying a firearm first requires a determination as to whether the individual is subject to any one of several disqualifiers that preclude him from asserting the defense, which are multi-faceted and not readily determinable. Under the facts here, which also include the presence and number of firearms and other weapons, the need to maintain officer safety, and a statute with qualifiers as numerous as § 790.25, the detention of slightly over 1 hour was reasonable in relation to the purpose of the stop, which was to abate a clear and present potential danger and to investigate and ascertain to a reasonable degree whether Plaintiffs were entitled to an exemption under Florida law governing open carry of firearms.

Plaintiffs also argue that there was no reason to continue to detain Plaintiffs or their property "once it was determined that the Plaintiffs' possession of the firearms were lawful." In this regard, Defendants submit that Plaintiffs point to no record evidence to suggest it was ever definitively determined that Plaintiffs' possession of the firearms was lawful prior to their release. Instead, Defendant Officers used their discretion and decided not to arrest Plaintiffs following an investigation that allayed their concerns to an acceptable degree. Moreover, because Defendants had probable cause to arrest Plaintiffs and thus impound their weapons, but instead used their discretion to allow them to go free with their firearms after conducting investigation and determining that they had assurances, all aspects of the investigatory detention and return of property were lawful. Any minor delay was reasonable and only as needed to ensure officer safety based upon substantial risk returning weapons and ammunition would have posed on the Pier, and because return of property was only slightly delayed by the time walking to parking lot, where all property was promptly and safely returned.

### B. Procedure for Returning Plaintiffs' Weapons Was Objectively Reasonable for Officer Safety Under the Circumstances and Did Not Violate Any Clearly Established Right.

As noted above, the method of returning Plaintiffs' weapons upon conclusion of the investigatory detention was reasonable based upon the substantial and legitimate risk to officer safety posed by returning Plaintiffs' weapons to them on the Pier. Defendant Officers' reasonableness in this regard was heightened under the circumstances due to the nature of the location, number of weapons and individuals involved, at least one of whom exhibited extreme agitation towards officers during much of the detention. Under the totality of the circumstances, it would be untenable to require officers to

return loaded weapons, or even unloaded weapons and ammunition, to individuals they had just detained while standing with them on a pier where the ability to retreat is limited. Instead, after explaining the procedure for how firearms could be returned, some of the Defendant Officers walked with Plaintiffs to the nearby parking lot and returned Plaintiffs' weapons by placing them in any vehicle stowage compartment selected by Plaintiffs. The basis for the procedure was explained to Plaintiffs, who were advised that they could retrieve and re-holster their weapons immediately once officers had an opportunity to clear the scene. *See* [ST. ¶¶ 58-59]. Nevertheless, Plaintiffs argue that there was "no reason" for Defendant Officers to "require" that Plaintiffs give them a plain view search of their vehicle compartments as a condition for the return of lawfully possessed, constitutionally protected property. As discussed above, the method of returning Plaintiffs weapons did in fact have a "reason", which was the important and very real concern for officer safety. Moreover, Defendant Officers did not in fact require Plaintiffs to give them a "plain view search of their vehicle compartments." As officers explained to Plaintiffs prior to returning their weapons, Plaintiffs could select any location in any vehicle that was "somewhere away from you", where their weapons, ammunition, and any other miscellaneous property would be placed until officers had an opportunity to safely clear the scene, which they promptly did. There is no evidence that Plaintiffs asked any the Defendant Officers for another option to have their weapons safely returned to them, or that any Plaintiffs refused consent to this procedure. Accordingly, and for the reasons set forth herein, there was no violation of law in this regard, and at minimum the Defendant Officers are entitled to qualified immunity on all claims arising out of this issue.

### C. Defendants Did Not Unlawfully Interfere With Plaintiffs' "Right to Continue Fishing" or Right to Assemble Following the Investigatory Stop.

Plaintiffs' Response claims that Defendants interfered with Plaintiffs' "right to continue fishing" and right to assemble for "no reason." As an initial matter, although Plaintiffs may have a license to fish in Florida waters as permitted by law, they do not have an inalienable statutory right to fish from the South Pointe Pier. It is undisputed that upon concluding the investigation and detention of Plaintiffs, Defendant Officers advised Plaintiffs that they were permitted to remain in the area and fish if they wished to do so. [ST. ¶ 57]. Indeed, Plaintiff Weiss did remain in the area after the investigatory detention concluded, re-holstering his firearm and fishing from the jetty adjacent to the Pier without any interference. [ST. ¶ 60]. While it is true that the Pier itself was closed to the public for a period following the incident, the closure applied to all persons and certainly did not prevent Plaintiffs from gathering anywhere else in the area to continue their demonstration or from fishing anywhere else legally permissible along South Pointe Park's vast waterfront. For these reasons and

those set forth in Defendants' Motions for Summary Judgment, Plaintiffs' claims that Defendants denied their constitutional right to assemble are unsupported by fact or law and cannot stand.

**D. Defendants Remain Entitled to Summary Judgment on Plaintiffs' § 1985 Claims.**

In their Response, Plaintiffs fail to provide any rebuttal to Defendants' arguments that Summary Judgment must be granted in their favor on Plaintiffs' 42 U.S.C. § 1985 claims as asserted in Count IX. Accordingly, Defendants will not endeavor to provide a substantive reply on this issue and maintain that they are entitled to Summary Judgement as to Count IX based upon the undisputed facts in the record and the grounds set forth in their respective Motions for Summary Judgment.

**E. Defendants Salabarria, Vidal, Bicelis, and Mitchell Entitled to Summary Judgment.**

In Defendant Officers' Motion for Summary Judgment, Sgt. Salabarria, Ofc. Vidal, Ofc. Bicelis, and Ofc. Mitchell each similarly asserted their entitlement to summary judgment on the grounds that Plaintiffs' Complaint is almost entirely devoid of any allegations against them, and that there exists a dearth of record evidence to support Plaintiffs' claims against them, if any. [D.E. 59, at 17-20]. Plaintiffs' Response briefly addresses three of the four officers' arguments on summary judgment, but nevertheless fails to create any genuine issue of material fact for trial.

As to Ofc. Mitchell, Plaintiffs' Response provides no rebuttal as to why Ofc. Mitchell is not entitled to summary judgment. Accordingly, Ofc. Mitchell respectfully asks this Court to grant summary judgment in his favor and dismissing him from this matter with prejudice.

With respect to Defendant Ofc. El. Vidal and Sgt. Salabarria, Plaintiffs' Response provides only a bare-bones rebuttal, stating that they are not entitled to judgment because they were "present at the scene and violated Plaintiffs' Constitutional Rights by continued and ongoing detention of the individual Plaintiffs." However, Plaintiffs fail to cite to single item of record evidence to establish why Ofc. El. Vidal or Sgt. Salabarria should remain in this case. Mere presence at the scene to provide backup and support is not sufficient to give rise to liability Accordingly, Ofc. El. Vidal and Sgt. Salabarria respectfully request summary judgment as to Plaintiffs' claims against them in this case.

As to Ofc. Bicelis, Plaintiffs also assert that she is not entitled to summary judgment because she was "present at the scene and violated Plaintiffs' Constitutional Rights by continued and ongoing detention of the individual Plaintiffs." Plaintiffs do cite to one item of record evidence, stating that Ofc. Bicelis is not entitled to summary judgment because she can purportedly be seen on Ofc. Garcia's BWC video creating a record of Plaintiffs' firearm serial numbers with her cell phone, in "violation of Fla. Stat. § 790.335." Plaintiffs do not cite to the portion of the video to identify what specific conduct they allege is Ofc. Bicelis "creating a record" of their firearm serial numbers. Moreover, Plaintiffs provide no explanation of how Ofc. Bicelis violated § 790.335, which does not specifically

proscribe the ask of making a video of serial numbers without more. Moreover, the U.S. Supreme Court has ruled that "the mere recording of serial numbers" does not constitute a seizure, even where an officer has only reasonable suspicion. *Arizona v. Hicks,* 480 U.S. 321 (1987). Because Plaintiffs have failed to establish any genuine issues of fact as to Ofc. Bicelis, she respectfully requests entry of summary judgment on all claims asserted against her herein.

### F. Defendants Are Entitled To Summary Judgment As To Plaintiffs' Battery And Excessive Force Claims

Under Florida law, officers are permitted to make a full custodial arrest whether the offense is a felony or a misdemeanor. *See Durruthy v. Pastor*, 351 F.3d 1080, 1093 (11th Cir. 2003) (citing Fla. Stat. § 901.15(1)). "[T]he application of *de minimis force*, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). "[Q]ualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." *Ferraro*, 284 F.3d at 1200. Additionally, while Defendant Officers here had more than reasonable suspicion to detain, it is worth noting that even where an officer has only reasonable suspicion, <u>if the use of force is only *de minimis*, it cannot be considered excessive</u> (emphasis added). *Roberts v. Kahl*, 2021 WL 371462 (11th Cir. 2021).

Based upon the uncontroverted evidence in the record, including videos exhibits which depict officers securing and disarming the Plaintiffs – essentially the only physical contact they had with any of the Plaintiffs – there are no genuine issues of material fact that Defendant Officers used force that was excessive or unreasonable. To the contrary, the record evidence demonstrates that the Defendant Officers who made any physical contact with Plaintiffs did nothing other than calmly handcuff, frisk, and disarm them – which is reasonable, *de minimis* at most and does not violate the Fourth Amendment. Similar analysis applies to establish Defendants' entitlement to summary judgment on Plaintiffs' state law battery claims as well. Defendant Officers are also entitled to wide-reaching qualified immunity as to Plaintiffs' federal claims in this case, including in this regard, as their actions were objectively reasonable and did not violate any clearly established rights.

### G. Plaintiffs' Application of Sovereign Immunity and Qualified Immunity to Claims Brought Under Fla. Stat. § 790.33 is Irrelevant Under the Claims and Defenses.

In their Response, Plaintiffs contend that neither qualified nor sovereign immunity applies to claims under Fla. Stat. § 790.33. Regardless of whether this is an accurate statement of law, the result is inconsequential under the claims and defenses that have been asserted in this case. Nevertheless, the case relied upon by Plaintiffs is beneficial for considering the Parties' positions as to § 790.33.

### A. Sovereign Immunity and § 790.33 (City).

As grounds for their position that sovereign immunity is inapplicable in an action under Fla. Stat. § 790.33, Plaintiffs rely upon the opinion of Florida's First District Court of Appeal in *Fla. Carry, Inc. v. Univ. of Fla.*, 180 So. 3d 137 (Fla. 1st DCA 2015). In that case, the Appellate Court found that that trial court erred in granting a motion to dismiss filed by the president of the defendant university based on immunity under § 768.28(9)(a), reasoning that § 768.28 applies only when the governmental entity is being sued in tort and does not extent the immunity provided in the statute to non-tort actions. The Appellate Court further ruled that, to the extent the claim against the president was based on § 790.33, which prohibited government subdivisions or entities other than the legislature from regulating firearms, it properly dismissed because § 790.33 did not apply to individuals. To be sure, Count I of Plaintiffs' Amended Complaint is the only claim based on § 790.33, and is only asserted against the City. In its Motion for Summary Judgment, the City has not argued that it is immune from liability as to this claim pursuant to § 768.28. Rather, the City argues that Plaintiffs' § 790.33 claim fails as a matter of law because there is no preempted ordinance or rule in existence, no claim for "actual damages", and no live controversy that could warrant Plaintiffs' claim under § 790.33 or any claim for declaratory or injunctive relief. Ironically, although Plaintiffs erroneously rely upon *Univ. of Fla.* to rebut a non-existent § 768.28 defense that the City has not asserted, that case does in fact support the argument that was made by the City regarding Plaintiffs' § 790.33 claim in the City's Motion for Summary Judgment. *Univ. of Fla.*, 180 So. 3d 137. Specifically, the 1st DCA in that case affirmed the trial court's determination that no case or controversy existed with respect to appellant's claim that the defendant university's policies regarding firearms violated that court's prior decision, as there was no evidence that the university attempted to enforce or enact any policy or regulation contrary to the prior decision, but instead added language to its regulation concerning firearms on campus, stating that university would comply with Florida law governing firearms in vehicles. Such reasoning is also applicable in the case at bar and justifies dismissal of Count I against the City, as there is no genuine dispute as to the fact that the City did not enact or cause to be enforced any local ordinance, administrative rule, regulation, or policy that conflicted with § 790.33, as set forth in detail by the City in its Motion for Summary Judgment. [D.E. 56, at 18-20].

**B.  Sovereign & Qualified Immunity and Fla. Stat. § 790.33 (Defendant Officers).**

In addition to the fact that Plaintiffs have not asserted a § 790.33 claim against the Defendant Officers in this case, *Univ. of Fla.*, 180 So. 3d 137, confirms that § 790.33 does not apply to individuals, and thus Defendant Officers will not endeavor to further address any erroneous suggestion that Plaintiffs may have implicitly attempted to advance regarding the Defendant Officers' entitlement to claim sovereign immunity under § 768.28 with respect Plaintiffs' state law tort claims

against them in this matter. Additionally, Plaintiffs' Response further states – with no supporting authority and little explanation – that qualified immunity does not apply to claims under Fla. Stat. § 790.33, reasoning that the Florida Legislature "created what is in essence a strict liability requirement for local governments who attempt to enact or enforce their own policies, rules or regulations regarding firearms." [D.E. 69, at 16]. Putting aside whether this is a correct statement of the law, it is of no moment here, where only the Defendant Officers seek to assert qualified immunity and no claim under § 790.33 has been asserted against them. To the extent that Plaintiffs mean to suggest that the Defendant Officers are not entitled to claim qualified immunity as to Plaintiffs' federal claims against them in this case, Plaintiffs' position is meritless.

**H. City Maintains Entitlement to Summary Judgment on Plaintiffs' Respondeat Superior Claim for Assault, Battery and False Imprisonment As Set Forth in Count XIII.**

In their Response, Plaintiffs fail to provide any rebuttal to the City's arguments that Summary Judgment must be granted for Defendants on Plaintiffs' Respondent Superior Claim asserted against the City in Count XIII. Accordingly, the City will not endeavor to provide a substantive reply on this issue, and respectfully maintains that it is entitled to Summary Judgement as to Count XIII based on the undisputed facts in the record and the grounds set forth in its Motion for Summary Judgment.

**I. Defendant Officers Maintain Their Entitlement to Immunity and Summary Judgment on Plaintiffs' State Law Tort Claims Asserted in Counts X-XII.**

Aside from Plaintiffs' contention that sovereign immunity is inapplicable to § 790.33 claims as noted above, which is irrelevant here, Plaintiffs have failed to rebut any of Defendant Officers' arguments asserting that they are entitled to summary judgment on Plaintiffs' state law claims for assault, battery, and false imprisonment. Accordingly, Defendant Officers will not endeavor to provide specific substantive reply and maintain all their previously proffered arguments as well as all those set forth herein, as applicable, including that Defendant Officers probable cause for all actions taken with respect to Plaintiffs, any force used was *de minimis*, and all actions were reasonable. Moreover, Defendant Officers maintain that they are entitled immunity afforded to officers under §768.28(9)(a), as Plaintiffs have pointed to no evidence to create any issue that Defendant Officers acted in bad faith, with malicious purpose, or with wanton and willful disregard for human rights, safety, or property. Based on the foregoing, Defendant Officers respectfully request summary judgment in their favor on all of Plaintiffs' state law claims against them in this matter.

<u>**CONCLUSION**</u>

WHEREFORE, for the reasons set forth herein and in Defendants' Respective Motions for Summary Judgment, [D.E. 56, 59], Statement of Undisputed Facts in Support Thereof, [D.E. 57], and in consideration of all evidence and undisputed facts in the record, [D.E. 58], Defendants submit that

there is no genuine issue of fact for trial, that they are entitled to judgment as a matter of law, and respectfully request that this Honorable Court grant final summary judgment in favor of the Defendants on all claims asserted against them by Plaintiffs in this matter, dismissing this matter with prejudice, and entering any such additional relief as this Court deems equitable and just.

Dated this 27th day of March, 2021.

s/Robert L. Switkes
Robert L. Switkes, Esq.
Florida Bar No. 241059
rswitkes@switkeslaw.com
s/Bradley F. Zappala
Bradley F. Zappala, Esq.
Florida Bar No. 111820
bzappala@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami Beach, Florida 33139
Telephone: (305) 534-4757
Facsimile: (305) 538-5504
*Attorneys for Defendant Officers*

RAUL J. AGUILA, CITY ATTORNEY
CITY OF MIAMI BEACH
1700 CONVENTION CENTER DR., 4TH FL
MIAMI BEACH, FLORIDA 33139
TELEPHONE: (305) 673-7470
FACSIMILE: (305) 673-7002
s/Robert F. Rosenwald
Robert F. Rosenwald, Esq.
E-Mail: RobertRosenwald@miamibeachfl.gov
*Attorneys for Defendant, City of Miami Beach*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this <u>28th</u> day of March, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/Bradley F. Zappala</u>
Bradley F. Zappala, Esq.

<u>**SERVICE LIST**</u>
*Florida Carry, Inc., et al v. City of Miami Beach, et al.*
**United States District Court, Southern District of Florida**
**Case No.: 19-cv-22303-KMW**

**Eric Friday, Esq.**
Kingry & Friday
1919 Atlantic Blvd.
Jacksonville, Florida 32207
Phone: 904-722-3333
Fax: 954-900-1208
E-Mail: efriday@ericfriday.com
*Attorney for Plaintiffs*

**Noel H. Flasterstein, Esq.**
Law Offices of Noel H. Flasterstein
1700 S. Dixie Hwy, Suite 501
Boca Raton, Florida 33432
Phone: 813-919-7400
*Attorney for Plaintiffs*

**Mark Fishman, Esq.**
1700 Convention Center Drive
4th Floor, Legal Department
Miami Beach, Florida 33139
Phone: 305-673-7470
*Attorney for Defendant, City of Miami Beach*

**Robert F. Rosenwald, Esq.**
1700 Convention Center Drive
4th Floor, Legal Department
Miami Beach, Florida 33139
Phone: 305-673-7470
Fax: 305-673-7002
E-Mail: RobertRosenwald@miamibeachfl.gov
*Attorney for Defendant, City of Miami Beach*